**UNITED STATES of America,**
**Appellee,**

v.

**Louis J. BADIA, M. D.,**
**Appellant.**

**No. 73–1171.**

United States Court of Appeals,
First Circuit.

Heard Nov. 8, 1973.

Decided Dec. 27, 1973.

Walter J. Hurley, Boston, Mass., for appellant.

Alan R. Hoffman, Asst. U. S. Atty., with whom James N. Gabriel, U. S. Atty., was on brief, for appellee.

Before ALDRICH, McENTEE and CAMPBELL, Circuit Judges.

PER CURIAM.

Appellant, a physician, was convicted on three counts of knowingly and intentionally distributing controlled substances in violation of 21 U.S.C. § 841(a)(1),[1] and on five counts of willfully, knowingly and intentionally causing the distribution of controlled substances, in violation of § 841(a)(1) and 18 U.S.C. § 2(b).[2] Appellant's main argument on appeal is that a physician who is validly registered with the federal government to "dispense" controlled substances, as he was, could not have been found on the evidence at trial to have "distributed" such substances in violation of § 841(a)(1). This argument is without merit and we affirm the conviction.

The principal government witness at trial was a federal agent. He testified that on three occasions he called on the appellant at the latter's office and was either directly sold controlled substances from appellant's stock or sold prescriptions for controlled substances which he then had filled at various pharmacies. The agent further testified that appellant never examined him in any way before selling him the drugs or prescriptions, and that appellant indicated that

---

1. The statute provides in pertinent part:

"(a) Except as authorized by this subchapter, it shall be unlawful for any person knowingly or intentionally—

(1) to manufacture, distribute, or dispense . . . a controlled substance."

2. The statute provides:

"(b) Whoever willfully causes an act to be done which if directly performed by him or another would be an offense against the United States, is punishable as a principal."

he knew the drugs were not to be used for therapeutic or medical purposes.[3] Appellant took the stand on his own behalf and denied every pertinent fact alleged by the agent. The jury found him guilty on all counts, obviously believing the agent's testimony and not that of appellant.

■ The government acknowledges that appellant is authorized to "dispense" controlled substances and therefore could not have been convicted of violating § 841(a)(1) unless the jury found that his actions constituted something other than dispensing, namely, distributing. The real issue, then, is the meaning of "dispense," which the statute defines as "deliver[ing] a controlled substance to an ultimate user or research subject by, or pursuant to the *lawful* order of, a practitioner . . . ." 21 U.S.C. § 802(10) (1970) (emphasis added). "Practitioner" is defined as a "physician . . . registered, or otherwise permitted, by the United States or the jurisdiction in which he practices or does research, to distribute, dispense, conduct research with respect to, administer, or use in teaching or chemical analysis, a controlled substance *in the course of professional practice or research."* 21 U.S.C. § 802(20) (1970) (emphasis added). The combined effect of these statutory definitions in the present context is to limit the meaning of "dispense" to delivery of controlled substances by a physician who is acting in the course of professional practice or research. The point is made explicitly in the regulations. *See* 21 C.F.R. § 306.-04(a) (1973). Delivery of controlled substances outside the course of professional practice or research would constitute "distributing", *see* 21 U.S.C. § 802(11) (1970), an activity which violates § 841(a)(1) even if carried on by a registered physician. United States v. Collier, 478 F.2d 268, 271–272 (5th Cir. 1973).[4]

■ In the instant case, the jury was properly charged that in order to convict appellant under § 841(a)(1) it had to determine whether he had delivered drugs and prescriptions to the agent and, if so, whether such deliveries were in the course of appellant's professional practice or research. The jury obviously concluded that deliveries had occurred and were not within the course of appellant's medical practice. Both conclu-

3. The following excerpt from the agent's testimony suggests its overall tenor:

"So I examined the bottle containing a hundred Desoxyn [a controlled substance], and I gave [the appellant] another $20, so I said, well, was that all? He said, 'The only thing I have left is some Ionamin [a noncontrolled substance],' and I told him that I couldn't make any money on the Ionamin. He told me that the kids told him that it was great for parties and that it was a real good pill. I said I wasn't interested.

"Then he told me that he was sorry that he hadn't met me three years before. He said that he used to get thousands of these tablets that he would have been able to supply. He also told me that he preferred to sell me the pills from the office because my name wasn't on them and his name wasn't on them."

4. We acknowledge that this interpretation of the statutory scheme conflicts with the recent decision of the Fifth Circuit in United States v. Leigh, 487 F.2d 206 (5th Cir.

1973). In *Leigh,* the court affirmed the dismissal of an indictment which charged a physician with unlawful "distribution" in violation of § 841(a)(1) where the physician was accused of writing prescriptions for controlled substances outside the course of his professional practice. The court held that instead he should have been indicted for unlawful "dispensing" in violation of § 841(a)(1). We disagree. We think the reason Congress included the term "dispense" in § 841(a)(1) was to compel physicians to become properly licensed. If not licensed, a physician could then be convicted of unlawful dispensing. However, once licensed, he could not be convicted of unlawful dispensing because, as we stated above, the statute defines the term in and of itself as a lawful act. It should also be noted that *Leigh* seemingly conflicts with the prior Fifth Circuit decision in *Collier, supra,* where the court affirmed a physician's plea of guilty to unlawfully "distributing" controlled substances in violation of § 841(a)(1).

sions were amply warranted by the record. Indeed, assuming as we must the truth of the agent's testimony for purposes of this appeal, appellant's conduct bore no more resemblance to professional medical practice than the conduct of any street-corner "pusher." A medical degree confers no immunity from criminal punishment. United States v. Collier, *supra* at 271; United States v. Warren, 453 F.2d 738, 744 (2d Cir.), cert. denied, 406 U.S. 944, 92 S.Ct. 2040, 32 L.Ed.2d 331 (1972).

Appellant's alternative contention that he was entrapped cannot even be considered in view of the fact that he has denied committing any acts on which the conviction could have been based. It is well settled in this circuit that one cannot both deny the deed and say that he was entrapped into doing it. Sylvia v. United States, 312 F.2d 145, 147 (1st Cir.), cert. denied, 374 U.S. 809, 83 S.Ct. 1694, 10 L.Ed.2d 1032 (1963). Quite apart from this principle, there was no evidence that would warrant a finding of entrapment.

Affirmed.