COMMONWEALTH *vs.* ARNOLD C. COMINS.

Barnstable.     May 4, 1976. — October 18, 1976.

Present: HENNESSEY, C.J., BRAUCHER, KAPLAN, & WILKINS, JJ.

*Narcotic Drugs. Physician. Practice, Criminal,* Indictment. *Evidence,* Relevancy and materiality; Opinion: expert; Hearsay. *Words,* "Dispense," "Ultimate user."

Dismissal of indictments was not required by the fact that they were issued solely on the basis of hearsay evidence. [224]

Commonwealth *v.* Comins.

Indictments charging a violation of G. L. c. 94C, § 32, were not required to allege that the defendant "knowingly or intentionally" dispensed a controlled substance unlawfully. [224-225]

A physician who unlawfully issued a prescription for a controlled substance could be said to have "dispensed" the substance within the meaning of G. L. c. 94C. [225-228]

At the trial of a licensed physician on indictments charging him with unlawfully dispensing controlled substances, judgments of acquittal were not required by the fact that prescriptions for the controlled substances which were given to undercover police officers on several occasions were not filled [230]; nor was there merit in the defendant's contention that the officers were not "ultimate users" within the meaning of G. L. c. 94C, § 1 [230-231].

Evidence that a physician gave prescriptions for controlled substances specifically requested by two undercover police officers on several occasions at short intervals without taking medical histories or examining either of them warranted a finding that he acted in bad faith and not in accord with accepted medical practice in violation of G. L. c. 94C, § 32. [232-233]

At the trial of a licensed physician on indictments charging him with unlawfully dispensing controlled substances, it was within the judge's discretion to permit an osteopathic physician, who did not treat drug dependent patients, to give his opinion that it was not consistent with accepted medical practice to prescribe the controlled substances at issue without obtaining a medical history and conducting a physical examination, and to give his opinion concerning proper medical practice in treating drug dependent patients in certain circumstances. [233-234]

At the trial of a licensed physician on indictments charging him with unlawfully dispensing controlled substances, there was no error in the admission of testimony from a pharmacist that prescriptions issued by the defendant were "fillable," even though such evidence was immaterial to the prosecutor's case [234]; nor was there error in the admission of testimony by an undercover police officer as to the conduct and remarks of the physician made in the officer's presence [234-235]; nor was there error in admitting testimony of an undercover police officer concerning two prescriptions given to him by the physician which were not the subject of the indictments [235].

INDICTMENTS found and returned in the Superior Court on April 4, 1974.

The cases were heard by *Zarrow,* J.

The Supreme Judicial Court granted a request for direct appellate review.

*Robert W. Harrington (Judith E. Diamond* with him) for the defendant.

*W. James O'Neill,* Assistant District Attorney (*Gary A. Nickerson,* Assistant District Attorney, with him) for the Commonwealth.

WILKINS, J.   The defendant, a licensed osteopathic physician, appeals from seven convictions for dispensing controlled substances in violation of G. L. c. 94C, § 32.[1] He challenges (1) the denial of his motions to dismiss each indictment, (2) the denial of his motions for judgments of acquittal, and (3) certain evidentiary rulings made during the course of his jury waived trial. This case is concerned principally with the proper form of an indictment which charges a prescribing physician with violation of the controlled substances act (G. L. c. 94C) and with the proof necessary to sustain a conviction of a physician for the unlawful prescribing of a controlled substance. We granted the defendant's application for direct appellate review. We affirm the convictions.

1. The defendant moved to dismiss the indictments, relying on several grounds.[2] Of those grounds which the defendant still pursues, some may be disposed of briefly.

The fact that the indictments were issued solely on the basis of hearsay evidence is not in itself a ground for their dismissal. *Commonwealth* v. *Gibson*, 368 Mass. 518, 522-525 (1975). *Commonwealth* v. *Lammi*, 310 Mass. 159, 163-164 (1941). *Costello* v. *United States*, 350 U.S. 359 (1956). See *Commonwealth* v. *Lincoln*, 368 Mass. 281, 285-286 n.2 (1975), for a discussion of a preferred procedure. These authorities indicate that, in the absence of extraordinary circumstances, an indictment based exclusively on hearsay will not be overturned. There are no extraordinary circumstances shown in the grand jury proceedings.

The indictments did not have to allege in the words of § 32 that the defendant "knowingly or intentionally" dis-

---

[1] The first paragraph of G. L. c. 94C, § 32, inserted by St. 1971, c. 1071, § 1, provides in part: "Except as authorized by this chapter, no person shall knowingly or intentionally manufacture, distribute, dispense or possess with intent to manufacture, distribute or dispense a controlled substance . . . ."

[2] Each indictment followed the same form, charging that the defendant on a certain day in March or April, 1973, at Orleans, "did unlawfully dispense a controlled substance, Class B, to wit: [naming the drug], not for a legitimate medical purpose, in violation of [G. L. c. 94C, § 32]."

pensed a controlled substance unlawfully. Although a knowing or intentional delivery is clearly an element of the crimes charged, as § 32 states, the form of these indictments was proper by reason of G. L. c. 277, § 38, as appearing in St. 1971, c. 1071, § 8, which states that "[i]n a prosecution under any provision of [G. L. c. 94C], for unlawfully ... dispensing ... a controlled substance ... it shall be sufficient to allege that the defendant did unlawfully ... dispense ... such alleged substance, without any further allegations ... but the defendant shall be entitled to a bill of particulars under [§ 40]." This language, adopted as part of the same act which inserted G. L. c. 94C, answers any claim that the indictment had to allege that the defendant acted "knowingly or intentionally." See *Commonwealth* v. *Baker,* 368 Mass. 58, 75-76, 77 (1975); *Commonwealth* v. *McClaine,* 367 Mass. 559, 560 (1975), and cases cited. Here, there is no question that the defendant had sufficient notice of the nature of the charges against him. The indictments stated that his conduct was "not for a legitimate medical purpose, in violation of [G. L. c. 94C, § 32]," and the defendant's motions for particulars were allowed and bills of particulars were filed to which the defendant has raised no objection.

We come then to the defendant's major challenge to the indictments. He contends that a registered physician cannot be guilty of "dispensing" a controlled substance in violation of G. L. c. 94C, § 32. He argues that a licensed physician cannot "dispense" a controlled substance in violation of G. L. c. 94C because only when the delivery of a controlled substance is a lawful delivery can one "dispense" that substance as the word "dispense" is defined in G. L. c. 94C, § 1, as amended by St. 1972, c. 806, § 3. Consequently, so the argument goes, no unlawful "dispensing" by a physician may occur under G. L. c. 94C. The inference is that a physician may be charged under G. L. c. 94C, § 32, with unlawful "distributing" of a controlled substance but not with "dispensing."[3]

---

[3] "Distribute" is defined in G. L. c. 94C, § 1, as "to deliver other than by administering or dispensing a controlled substance."

The premise of the defendant's argument fails on a literal reading of the definition of "dispense." If "dispensing" only can be a lawful act under G. L. c. 94C, it is difficult to explain why the word appears in § 32 to describe unlawful conduct.

A physician who unlawfully issues a prescription for a controlled substance may "dispense" a controlled substance. "Dispense" means "to deliver a controlled substance to an ultimate user or research subject ... by a practitioner ... including the prescribing and administering of a controlled substance ...." G. L. c. 94C, § 1, as amended by St. 1972, c. 806, § 3. There is nothing in this definition which indicates that the controlled substance or the prescription must be delivered lawfully. The definition of "practitioner" includes a physician even when he is acting outside of his lawfully authorized role. G. L. c. 94C, § 1, inserted by St. 1971, c. 1071, § 1.[4]

The question whether a licensed physician who has delivered a controlled substance unlawfully under the Comprehensive Drug Abuse Prevention and Control Act of 1970, 21 U.S.C. §§ 801 et seq. (1970), should be charged with "dispensing" or with "distributing" that substance has attracted divergent views in the United States Courts of Appeals.[5] Some courts have indicated that a physician is "dispensing" when he prescribes a controlled substance

---

[4] The defendant, even if acting unlawfully, was nevertheless still "[a] physician ... registered to distribute [or] dispense ... a controlled substance in the course of professional practice ... in the Commonwealth."

[5] An initial disagreement among the circuits as to whether a physician may be charged under 21 U.S.C. § 841(a)(1) (1970) with unlawful delivery of a controlled substance was resolved in the affirmative in *United States* v. *Moore,* 423 U.S. 122 (1975). However, because the defendant in the *Moore* case was charged both with "distributing" and "dispensing" (*id.* at 124), and no question was raised concerning this aspect of the indictment, the *Moore* opinion does not resolve the split among the circuits concerning the proper verb ("dispense" or "distribute") to describe a physician's unlawful prescribing under 21 U.S.C. § 841(a)(1) (1970). The Uniform Controlled Substances Act avoids the problem by referring to "deliver[y]" of a controlled substance (see § 401[a]), a word which the Commissioners' Note to § 401 indicates was selected to include both dispensing and distributing, as defined in the uniform act. Uniform Controlled Substances Act § 401, Note.

outside of the lawful scope of his practice. See *United States* v. *Hicks*, 529 F.2d 841, 844 (5th Cir. 1976); *United States* v. *Green*, 511 F.2d 1062, 1072 (7th Cir. 1975), cert. denied, 423 U.S. 1031 (1976); *United States* v. *Leigh*, 487 F.2d 206, 207-208 (5th Cir. 1973); *United States* v. *Bartee*, 479 F.2d 484, 486-488 (10th Cir. 1973). Other courts have indicated that a physician does not "dispense" a controlled substance in such a circumstance; he "distributes" it. See *United States* v. *Ellzey*, 527 F.2d 1306, 1308 (6th Cir. 1976); *United States* v. *Rosenberg*, 515 F.2d 190, 200 (9th Cir. 1975), cert. denied, 423 U.S. 1031 (1976); *United States* v. *Black*, 512 F.2d 864, 866 (9th Cir. 1975); *United States* v. *Badia*, 490 F.2d 296, 298 (1st Cir. 1973).[6]

We do not face, and need not decide, the issue which has divided the Courts of Appeals. A 1972 amendment of the definition of "dispense" in G. L. c. 94C, § 1, has undercut the reasoning lying behind those Federal opinions which have held that a physician "distributes" but does not "dispense" a controlled substance when he exceeds his professional authorization. Prior to its amendment in 1972, G. L. c. 94C, § 1, defined "dispense" in much the same language as "dispense" is defined in the Federal law. Compare G. L. c. 94C, § 1, inserted by St. 1971, c. 1071, § 1, with 21 U.S.C. § 802 (1970). In the original Massachusetts law, and still under the Federal law, the definition of "dispense" includes the delivery of a controlled substance "pursuant to the *lawful* order of a practitioner" (emphasis supplied). See St. 1971, c. 1071, § 1. The 1972 amendment of the Massachusetts definition eliminated the word "lawful" so that delivery of a controlled substance pursuant to an unlawful order of a physician could constitute "dispensing." St. 1972, c. 806, § 3. The absence of the word "lawful" in the Massachusetts definition of dispense makes the reasoning of the First Circuit Court of Appeals in the

---

[6] Much can be said for the approach of the uniform act which replaces "distribute" and "dispense" with the single verb "deliver." In these circumstances, the choice of words should not be permitted to become crucial, and judicial time can be better spent trying to resolve more important questions.

*Badia* case seem inapplicable under the present Massachusetts law.[7] The elimination of the word "lawful" with respect to a physician's order when another person acts pursuant to that order gives substantial support to our view that a literal reading of the definition of "dispense" is the correct one: that a physician "dispenses" whether lawfully or unlawfully.[8]

2. We turn next to the defendant's argument that the evidence did not warrant a conviction under any of the indictments and that, consequently, each motion for judgment of acquittal should have been allowed.

The judge would have been warranted in finding that, on March 27, 1973, one Garrison, a State police officer assigned to the Criminal Information Bureau, Narcotics Unit, went to the defendant's office, which was located on the ground floor of his home in Orleans. The defendant was conversing with several adolescents in the reception area. Posing as a patient, Garrison stated that he wished to discuss a personal matter with the defendant. They went into an adjoining consultation room where Garrison told the defendant that he had a drug problem of which he wanted to be free. The defendant asked Garrison whether he used "scag," a street name for heroin, and Garrison replied that he "shot up a couple of bags every two or three days." The defendant then noted that Garrison had taken an important step and asked what he wanted. Garrison replied that he wanted something to help him over the "hard times." The defendant then asked which drug he wanted. Garrison made a request for nu-

---

[7] All the other opinions of Courts of Appeals cited above (except perhaps the *Black* case, *supra* at 866) which reach the *Badia* result contain no significant analysis of the question and rely on the *Badia* opinion.

[8] A contrary view would mean that an unlawful prescription would require a charge of "dispensing" for one purpose (in a charge against one who distributes a controlled substance pursuant to the prescription) and not for another (in a charge against that physician for acting outside his professional authorization in issuing the prescription). Such legal technicalities should be avoided where possible, and the Legislature has done so in its treatment of the definition of "dispense."

morphan, which the defendant refused "because a pharmacist would report a prescription for that to the police . . . ." Garrison rejected the defendant's offer of robitussin and countered with a request for percodan, to which the defendant acceded. They then returned to the reception area where the defendant wrote out a prescription for percodan and another prescription not the subject of an indictment here. When he gave the prescriptions to Garrison, the defendant stated, "I have to write the Percodan 4 to 6 hours per day for pain, but you know how to use it," and suggested that he fill the prescriptions in Hyannis instead of Provincetown. No medical history was taken by the defendant, and he made no physical examination of Garrison. Garrison did not see the usual items associated with a medical practice when he was in the defendant's office.

On March 30, 1973, a female police officer, Phinney, also posing as a patient, went to the defendant's office and found the defendant engaged in a nonmedical discussion with three adolescents, which lasted over an hour. During this time, Garrison returned to the defendant's office, and the defendant issued another prescription for percodan to him. Garrison had spoken with the defendant by telephone earlier that day, and the defendant had agreed to have Garrison return for a second prescription. In the course of sitting in the defendant's office, Phinney observed the doctor issuing a prescription for a controlled substance to each of the two adolescent girls who were present. One girl was able to get a prescription for percodan when she said she was on "junk." Phinney then stated that she was on "junk," and the defendant wrote a prescription for percodan for her. He asked her to fill the prescription in Boston. At no time on March 30 did the defendant either take a medical history or conduct a physical examination of either Garrison or Phinney.

On April 3, 1973, Garrison went to the defendant's office again. Phinney arrived shortly thereafter. Phinney requested another prescription of percodan, telling the defendant that the prescription he had given her on March thirtieth had been used up. When the defendant asked her

if she wanted anything else, she said she wanted some "T-20's," a reference to biphetamine T-20, a substance which at the time should not have been made available by a pharmacist. A short conversation ensued between Garrison, Phinney, and the defendant as to whether T-20's were "good to get off on," after which the defendant issued Phinney a prescription for percodan and one for biphetamine T-20. When Phinney left, Garrison asked the defendant for another prescription for percodan and for something to help him sleep, and the defendant gave him another prescription for percodan and a prescription for tuinal. The defendant requested that he fill these prescriptions off the Cape. At no time on April 3 did the defendant take a medical history or physically examine either police officer.

At each office visit, each officer paid the defendant $10. The prescriptions were never filled. Percodan, biphetamine T-20, and tuinal are all controlled substances under G. L. c. 94C. There was expert medical testimony that proper medical practice required a medical history and physical examination before prescribing these drugs for any medical purpose.

We reject as without merit the defendant's argument that the Commonwealth's proof was insufficient because the various prescriptions were not filled. The definition of "dispense" appearing in G. L. c. 94C, § 1, includes "prescribing" within the act of dispensing. The words "including the prescribing and administering of a controlled substance" appearing in the definition of "dispense" mean that either "prescribing" or "administering" are intended to be acts of dispensing. See *United States* v. *Leigh,* 487 F.2d 206, 208 (5th Cir. 1973). A disjunctive reading of the word "and" is called for in the context. See *United States* v. *Bartee,* 479 F.2d 484, 487 (10th Cir. 1973), where a similar conclusion was reached as to parallel language in 21 U.S.C. § 802(10) (1970).

The defendant continues, arguing that the delivery must be to "an ultimate user or research subject" (G. L. c. 94C, § 1) in order to constitute a dispensing of a controlled sub-

stance and contends that the police officers were neither. An "ultimate user" is defined in G. L. c. 94C, § 1, inserted by St. 1971, c. 1071, § 1, as "a person who lawfully possesses a controlled substance for his own use ...." The defendant argues that the undercover police officers did not "possess" a controlled substance "lawfully" and "for [their] own use." As we have already indicated, the prescribing itself constitutes a delivery of a controlled substance within the definition of the word "dispense." There is thus "possession" of a controlled substance without the necessity of going through the needless expense of filling the prescription. Cf. *United States* v. *Green*, 511 F.2d 1062, 1072 (7th Cir. 1975), cert. denied, 423 U.S. 1031 (1976). We think also that the possession was "lawful." Police officers acting undercover received the prescriptions in pursuit of their work, and, therefore, their possession was lawful, even if the physician was not acting lawfully in delivering those prescriptions. By the same token, the prescriptions were received for the police officers' own use, in the sense that they received them while acting in the role of a consumer, the purpose of the words "for his own use" in the definition of an "ultimate user" in G. L. c. 94C, § 1.

If undercover police operations such as were conducted here could not lead to convictions under G. L. c. 94C because the police officers were not "ultimate user[s]," the investigation and prosecution of drug violators would be limited severely and unnecessarily. We do not attribute to the Legislature an intention to prohibit undercover police operations of the type involved in this case. The defendant's argument in effect requires us to do so, and we reject it. See *Commonwealth* v. *Miller*, 361 Mass. 644, 655 (1972); *United States* v. *Bartee, supra* at 487, where a contention that the drug must be used was rejected under the parallel definition of an "ultimate user" in the Federal act.

We come then to the defendant's argument that the evidence of the circumstances in which the defendant delivered the prescriptions was insufficient to warrant a conviction of a physician for unlawful dispensing of a con-

trolled substance. This argument requires us to analyze the standard to which a physician is held under G. L. c. 94C when he dispenses a controlled substance.

Section 32 of G. L. c. 94C provides in part that "[e]xcept as authorized by this chapter, no person shall knowingly or intentionally . . . dispense . . . a controlled substance . . . ." Clearly a statutory exception is necessary for persons who practice medicine, and for other professionals who make legitimate uses of drugs. For that reason, G. L. c. 94C, § 19 (a), inserted by St. 1971, c. 1071, § 1, states (in part) that "[a] prescription for a controlled substance to be valid shall be issued for a legitimate medical purpose by a practitioner acting in the usual course of his professional practice."

A physician who issues a prescription not intending to treat a patient's condition in the usual course of his practice of medicine does not issue a valid prescription, and he thus violates § 32. Such a physician violates § 32 because he acts in bad faith, in the sense that his purpose is not to treat the patient in accord with accepted medical practice. Although the physician's failure to comply with accepted medical practice is an element of the crime and evidence is admissible that the physician failed to adhere to accepted medical practice, mere malpractice in the prescribing of drugs has not been made a crime. To prove the crime, the physician's purpose, his state of mind, must be shown to have been such that he was not intending to achieve a legitimate medical objective. *United States* v. *Rosenberg*, 515 F.2d 190, 193, 194-195 (9th Cir. 1975), cert. denied, 423 U.S. 1031 (1976). *United States* v. *Collier*, 478 F.2d 268, 272 (5th Cir. 1973). Cf. *United States* v. *Moore*, 423 U.S. 122, 138-139, 142-143 (1975).

We have no question that the evidence summarized above warranted a finding that the defendant acted in bad faith in delivering the prescriptions which are the subject of the indictments in this case. Also, there was evidence that the defendant's conduct was not in accord with accepted medical practice. He took no medical histories and

conducted no physical examinations. These facts support an inference that the defendant did not have medical needs in mind when he issued the prescriptions and that he was not interested in finding physical indications of such needs. *United States* v. *Ellzey,* 527 F.2d 1306 (6th Cir. 1976). *United States* v. *Rosenberg,* 515 F.2d 190, 199 (9th Cir. 1975), cert. denied, 423 U.S. 1031 (1976). *United States* v. *Green,* 511 F.2d 1062, 1066, 1073 (7th Cir. 1975), cert. denied, 423 U.S. 1031 (1976). *United States* v. *Badia,* 490 F.2d 296, 297 (1st Cir. 1973). *United States* v. *Bartee,* 479 F.2d 484, 489 (10th Cir. 1973).

There was other evidence to support the judge's findings. The defendant permitted Garrison to name the drug he wanted. See *United States* v. *Ellzey,* 527 F.2d 1306 (6th Cir. 1976). The defendant expressed concern about where the prescriptions would be filled. See *United States* v. *Larson,* 507 F.2d 385, 387-388 (9th Cir. 1974); *United States* v. *Bartee,* 479 F.2d 484, 489 (10th Cir. 1973). The issuing of additional prescriptions for percodan at short intervals to Garrison and Phinney could have been found to be inconsistent with accepted medical treatment and support an inference that the prescriptions were not intended to serve a medical purpose. See *United States* v. *Green,* 511 F.2d 1062, 1066, 1073 (7th Cir. 1975), cert. denied, 423 U.S. 1031 (1976); *United States* v. *Larson,* 507 F.2d 385, 387-388 (9th Cir. 1974); *United States* v. *Bartee, supra.* The defendant's remarks and actions in the course of the officers' visits, which need not be summarized here, also support the conclusion that the prescriptions were not issued for a medical purpose.

3. There was no prejudicial error in any rulings on the admission of evidence.

It was within the judge's discretion to permit an osteopathic physician, who did not treat drug dependent patients, to give his opinion that it was not consistent with accepted medical practice to prescribe the drugs which the defendant prescribed without obtaining some medical history or background and without first conducting a phys-

ical examination. See *Commonwealth* v. *Boyd,* 367 Mass.
169, 182-183 (1975). W.B. Leach & P.J. Liacos, Massachu-
setts Evidence 97 (4th ed. 1967). The physician's opinion
concerning proper medical practice in treating drug de-
pendent patients in certain circumstances was also admis-
sible. His lack of detailed experience with the treatment
of drug dependent patients went to the weight, but not
to the admissibility of his testimony.

Admission of evidence from a pharmacist that six of the
seven prescriptions of the defendant were "fillable" is no
ground for reversal of the convictions. In the absence of
any contention by the defendant that the seven prescrip-
tions were not in fact orders for drugs, as they appeared
to be on their face, the question whether the prescriptions
were in proper form, and hence fillable, was immaterial to
the prosecutor's case, as we have interpreted G. L. c. 94C.
However, the admission of testimony that certain prescrip-
tions would have been filled by a pharmacist if presented
seasonably did not prejudice the defendant in any way.[9]

We find no impropriety in permitting the undercover
police officers to testify concerning statements made by the
defendant in their presence during the course of their visits
to the defendant's office. Some of these statements were
made to third persons who were in the doctor's waiting
room. Some of the statements were profane; some were
trivial; and some indicated that the defendant had young
persons in the area of his office with whom he engaged in
general discussions of sex and drugs. All these statements
were made by the defendant in the presence of the witness.
There is, therefore, no valid hearsay objection to the ad-
mission of the testimony.

The issue of the relevancy of this evidence is a more
substantial one. However, the question whether the de-
fendant was acting in the usual course of his practice and

---

[9] The defendant raises no objection to the pharmacist's testimony
that the prescription for biphetamine T-20 would not have been filled.
The witness testified that the Federal Food and Drug Administration
had withdrawn this compound from the market.

in accord with accepted medical practice was an important issue in the case. In such a situation, the conduct and remarks of the physician in the patient's presence may be helpful in assessing the physician's good faith or bad faith in prescribing the drugs. Although in a case tried to a jury, some of the defendant's comments might have been so prejudicial as to distract the jury from their proper fact-finding duties, where this case was tried to a judge we see no overriding prejudice which makes the admission of otherwise relevant evidence improper.

There was no error in admitting testimony from one of the police officers that the defendant gave him two prescriptions not the subject of indictments. As we have said the circumstances of the purported physician-patient relationship are relevant to the basic question of the bona fides of the defendant's conduct in prescribing the controlled substances which are the subject of the indictments. Thus, evidence of the circumstances under which other drugs are prescribed at the same time is admissible.

*Judgments affirmed.*