CommonWEALTH vs. Ponciano M. De La Cruz.

Norfolk.   October 18, 1982. — December 16, 1982.

Present: Perretta, Cutter, & Kass, JJ.

*Controlled Substances.   Indecent Assault and Battery.   Due Process of Law,* Vagueness of statute.   *Entrapment.   Words,* "Dispense," "Distribute."

Conviction of a physician on indictments charging unlawful distribution of a controlled substance, rather than unlawful dispensing, presented no substantial risk of a miscarriage of justice, where the theory of the Commonwealth's case, that the defendant delivered certain drugs in a manner not consistent with acceptable medical practice, was evident from the outset of the trial; where the defendant's position was that the drugs were prescribed for valid medical reasons; and where the judge, without objection, instructed the jury with respect to unlawful dispensing.  [56-57]

At a criminal trial, the jury's conclusion that the defendant, a physician, had prescribed drugs in a manner not consistent with acceptable medical practice, and without the intention of achieving a legitimate medical objective, presented no substantial risk of a miscarriage of justice.  [57-58]

At a criminal trial the judge did not err in leaving the issue of entrapment to the jury.  [58]

General Laws c. 265, § 13H, was not unconstitutionally vague as applied to a physician charged with indecent assault and battery upon a woman who consulted him.  [58-59]

At the trial of a physician on indictments charging indecent assault and battery upon a woman who consulted him, there was sufficient evidence for the jury to consider whether the touchings were consented to and whether they were medically necessary.  [59-60]

INDICTMENTS found and returned in the Superior Court Department on November 10, 1980.

The cases were tried before *Barton, J.*

*Kathleen A. Donahue* for the defendant.

*Carmen W. Picknally, Jr.*, Assistant District Attorney (*Charles J. Hely*, Assistant District Attorney, with him) for the Commonwealth.

PERRETTA, J. The defendant, a doctor, appeals from his convictions by a jury on eleven indictments, four charging him with indecent assault and battery on one Kathleen M. Coletta, an undercover State trooper, and seven charging him with the unlawful distribution of Valium and Mellaril to Coletta and to one Herbert Harding, an undercover State trooper who had posed as Coletta's boyfriend. On appeal, the defendant argues: (1) that a physician cannot be convicted of distributing rather than dispensing controlled substances where the evidence shows, at best, that the prescriptions were not issued in accordance with acceptable medical practice; (2) that G. L. c. 265, § 13H, is unconstitutionally vague in that it failed to give him notice that his touchings of Coletta were indecent and, therefore, criminal acts; and (3) that the verdicts of guilty are against the weight of the evidence. We affirm.

1. *The Facts.*

The evidence would warrant the jury in finding the following facts as to each of the indictments.

a. *July 17, 1980: Indecent Assault and Battery.*

Coletta went to the defendant's medical office, gave a false name, address, and occupation, and made a request for medical attention for a pretended ailment. She told the defendant that four months earlier she had undergone orthopedic surgery on her toe and that she was experiencing discomfort when she wore high-heeled shoes. The defendant examined Coletta's foot and took her blood pressure. He placed a stethoscope on her left breast, asked her about her smoking, and moved the stethoscope to her back. As he did this, he fondled her right breast with his free hand, and Coletta pushed his arm away.[1] When he completed the examination, the defendant gave Coletta prescriptions for ampi-

---

[1] Coletta was dressed in dungarees and a scoop-neck jersey, and she was not wearing a bra.

cillin (for bronchitis), Fastin (to control her weight should she attempt to give up her smoking habit), and propoxphene (for her foot pain).

b. *August 12, 1980: Indecent Assault and Battery, Valium.*

Coletta went to the defendant's office and told him that nothing was wrong but she would like a prescription for Valium. The defendant examined Coletta, again using his stethoscope and fondling her breast. He gave her a prescription for a one-month's supply of Valium.

c. *August 21, 1980: Valium.*

Coletta asked the defendant, at his office, for more Valium, explaining that she had given some from her earlier prescription to a girlfriend and had taken the rest herself. The defendant admonished her about giving away controlled drugs, conducted a brief physical examination, and gave Coletta another prescription for Valium.

d. *September 11, 1980: Valium.*

Coletta went to the defendant's office and told him that she was neither nervous nor in pain but that she wanted Percodan. The defendant examined her, fondling her breast and placing a stethoscope directly over it, and running his hands along her thighs as he spoke with her. At the end of the examination, the defendant gave Coletta a prescription. It was not until after she left the defendant's office that she realized the prescription was for Percogesic and not Percodan. Coletta returned to the defendant's office and renewed her demands for Percodan, but the defendant refused, telling her that he could lose his license. She then requested more Valium. The defendant wrote her a prescription for ninety Valium, "marked it off in two refills," according to Coletta, and told her that he did not want to see her "for a while."

e. *September 16, 1980: Mellaril.*

Persisting in her efforts to secure a prescription for Percodan, Coletta returned to the defendant's office. Again, the defendant refused to give her Percodan unless she was in pain. When the defendant asked what she had done with

the Valium, Coletta replied that she had traded it for Percodan. She explained that Percodan had a street value two or three times that of Valium. Coletta told the defendant that she "would do anything" for a Percodan prescription. Remaining steadfast, the defendant refused and, instead, gave her a prescription for Mellaril.

f. *September 29, 1980: Indecent Assault and Battery, Valium.*

Coletta went to the defendant's office and told him that she wanted a prescription for either Valium or Mellaril. The defendant examined her, fondling her breasts, rubbing her spine, touching her buttocks, and reaching between her legs. She told him she "would do anything" for Percodan, but he refused, and gave her a prescription for Valium.

g. *October 8, 1980: Indecent Assault and Battery, Valium.*

When Coletta went to the defendant's office and asked for more Valium, she also told him that she again had traded her prescribed Valium for Percodan. Coletta told the defendant that her boyfriend was with her and that he, too, wanted Valium. The defendant examined her, fondling her breasts. When he tried to reach beneath her underpants, Coletta was able to stop him by tightening the waistband to her dungarees. The defendant gave her a prescription for Valium and then saw Harding, who had given a false name. Harding told the defendant that nothing was wrong, that "I just like to do [Valium]. I only do one a day, and I wouldn't be back more than once a month." The defendant took Harding's blood pressure, conducted a brief physical examination, and gave him a prescription for sixty Valium.

h. *Acceptable Medical Practices.*

When Coletta left the defendant's office on July 17, she went to see Dr. Eugene Tyrell and asked that he examine her. Dr. Tyrell testified that on that date Coletta had a slight swelling on one toe. Her lungs were normal and her chest clear. She had no signs of bronchitis or any other respiratory disease. Dr. Tyrell stated that it would not be

appropriate to check the torso of a twenty-five year old woman as part of an examination for the deformity of the toe he had seen in examining Coletta. Dr. Tyrell was asked about each of the above-described incidents, and we need not reiterate his replies. It is sufficient to relate only that he testified that none of the defendant's actions, in respect to both the touchings and the prescriptions, was consistent with acceptable medical practices.

Dr. Daniel Weiss testified that Valium is prescribed to tranquilize or relieve nervous distress and that it is not an acceptable medical practice to give a controlled substance to a patient who has no condition requiring medication. He also stated that it was not medically acceptable to substitute a tranquilizer for a pain killer (Percogesic) or to prescribe such amounts of Valium as the defendant had authorized within the time period here involved. Dr. Weiss further testified that it was unacceptable medical practice to ask patients what type of medication they wanted or to give medication upon request: "Medicine should be prescribed for a specific reason and with specific intent and for a specific cause."

2. *"Distribute" and "Dispense."*

The defendant argues that he cannot be convicted of unlawful distribution because the only permissible charge against a physician who delivers controlled substances in a manner inconsistent with acceptable medical practices is unlawful dispensing. As support for this proposition, he relies upon the definitions of "dispense" and "distribute," as set out in G. L. c. 94C, § 1,[2] and upon *Commonwealth v. Comins,* 371 Mass. 222, 225-228 (1976), holding that a phy-

---

[2] General Laws, c. 94C, § 1, as amended by St. 1972, c. 806, § 3, defines "dispense" as "to deliver a controlled substance to an ultimate user or research subject or to the agent of an ultimate user or research subject by a practitioner or pursuant to the order of a practitioner, including the prescribing and administering of a controlled substance and the packaging, labeling, or compounding necessary for such delivery." Section 1 defines "distribute" as "to deliver other than by administering or dispensing a controlled substance."

sician who unlawfully issues a prescription may be charged with dispensing.

As the defendant did not raise this issue in the trial court on either a motion to dismiss or a motion for a required finding of not guilty, brought under Mass.R.Crim.P. 13(c) and 25, 378 Mass. 872, 896 (1979), respectively, our consideration is confined to whether the indictments fail "to charge an offense." G. L. c. 277, § 47A, as appearing in St. 1979, c. 344, § 39, or whether there is a substantial risk that a miscarriage of justice otherwise has occurred.

There is no doubt that the indictments brought against the defendant under G. L. c. 94C, § 32C(a), Valium, and § 32D(a), Mellaril, "charge an offense." See *Commonwealth* v. *Pentz,* 247 Mass. 500, 506 (1924); *Commonwealth* v. *Palladino,* 358 Mass. 28, 31 (1970); *Commonwealth* v. *Burns,* 8 Mass. App. Ct. 194, 195-196 (1979).

Nor do we see any possible risk of a miscarriage of justice arising out of the indictments alleging distribution rather than dispensing. The defendant did not move for a bill of particulars. Mass.R.Crim.P. 13(b), 378 Mass. 872 (1979). The theory of the Commonwealth's case — that the defendant delivered Valium and Mellaril in a manner not consistent with acceptable medical practices and which was, therefore, unlawful — was evident from the start. The defendant's position at trial, as demonstrated by the cross-examination of the Commonwealth's witnesses, the defendant's testimony, and the closing argument to the jury, was that the drugs were prescribed for valid medical reasons. The trial judge instructed the jury on unlawful dispensing, and the defendant's trial counsel made no objection to the charge. The defendant makes no showing or argument that he was prejudiced by the now alleged defect in the indictments.

3. *Evidence of Unlawful Dispensing.*

Without having filed a motion under Mass.R.Crim.P. 25(a) or (b), 378 Mass. 896 (1979), the defendant argues that the Commonwealth failed to show that he did not write the prescriptions in accordance with acceptable medi-

cal practice or with the intention of achieving a legitimate medical objective. See *Commonwealth* v. *Comins*, 371 Mass. at 232. He contends that the evidence equally sustains two contradictory inferences, that the defendant exercised his independent medical judgment or that he acted outside the scope of acceptable medical treatment, and, therefore, his convictions on the drug charges must be set aside. See, e.g., *Commonwealth* v. *Eramo*, 377 Mass. 912 (1979), and cases therein cited.

Looking to the previously recited evidence presented by the Commonwealth, we conclude that there is no substantial risk that a miscarriage of justice has occurred. See *Commonwealth* v. *Comins*, 371 Mass. at 232-233; *Arthurs* v. *Board of Registration in Medicine*, 383 Mass. 299, 309 (1981); *Commonwealth* v. *Lozano*, 5 Mass. App. Ct. 872 (1977).

4. *Entrapment.*

The defendant next argues that if the evidence was sufficient to show that his actions relative to the drug charges were criminal, his convictions nonetheless must be reversed because he was entrapped by Coletta and Harding.

The defendant did not argue to the trial judge pursuant to rule 25 that "[t]he conduct of [Coletta and Harding] was . . . so 'shocking or offensive' as to constitute entrapment as matter of law." *Commonwealth* v. *Lozano*, 5 Mass. App. Ct. at 873. The trial judge instructed the jury on the issue and elements of entrapment, even though he had not been requested to do so by the defendant's then attorney, who also took no objection to the charge. See Mass.R.Crim.P. 24(b), 378 Mass. 895 (1979). Based upon the evidence presented by the Commonwealth, we conclude that there was no error, let alone a substantial risk of a miscarriage of justice, in putting the issue to the jury. *Commonwealth* v. *Miller*, 361 Mass. 644, 650-653 (1972). *Commonwealth* v. *Lozano*, 5 Mass. App. Ct. at 873.

5. *Unconstitutional Application of G. L. c. 265, § 13H.*

General Laws c. 265, § 13H, inserted by St. 1980, c. 459, § 5, provides in relevant part that "[w]hoever com-

mits an indecent assault and battery on a person who has attained age fourteen" shall be subject to criminal sanctions. The defendant contends that § 13H "is unconstitutionally vague as applied to the facts of this case." The defendant's argument does not concern his status as a physician; rather, it is only that "he was given no fair warning that it is a criminal act in Massachusetts to touch the breasts, abdomen, buttocks, thighs, and pubic area of a female." He focuses his argument on the word "indecent."

Simply put, considering the defendant's actions and the language of § 13H as "measured by common understanding and practices," *Commonwealth* v. *Jarrett,* 359 Mass. 491, 497 (1971), we conclude that "there would be little disagreement as to whether the defendant's conduct offended the common understanding and practices of" indecent assault and battery. *Commonwealth* v. *Gallant,* 373 Mass. 577, 590 (1977).

6. *Indecent Assault and Battery Convictions.*

Notwithstanding his failure to have raised these issues before the trial judge under rule 25, the defendant argues that his convictions on the indecent assault and battery indictments must be set aside because: (1) assuming that Coletta did not consent to the touchings, the Commonwealth failed to prove the necessary elements of force and violence; (2) the evidence shows that Coletta consented to the touchings; and (3) the evidence shows that the touchings were medically necessary.

The defendant's claim that force and violence are necessary elements of a criminal assault and battery is wrong and requires no discussion. See *Commonwealth* v. *Appleby,* 380 Mass. 296, 305 (1980). As to the defendant's remaining contentions, the Commonwealth presented sufficient evidence for the jury to consider whether Coletta consented to the touchings[3] and whether they were medically necessary.

---

[3] The defendant makes special reference to the acts of August 12, 1980, and argues that Coletta's testimony shows that she did not believe that she had been the victim of an indecent assault and battery on that date. We

See *Commonwealth* v. *Simmons,* 8 Mass. App. Ct. 713, 717 (1979).

*Judgments affirmed.*

have reviewed the transcript and regard the defendant's interpretation of Coletta's testimony as strained.