COMMONWEALTH *vs.* NORMAN S. WOOD.

Middlesex.   November 10, 1983. — December 23, 1983.

Present: HALE, C.J., GRANT, & ARMSTRONG, JJ.

*Narcotic Drugs.   Dentist.*

At the trial of an indictment under G. L. c. 94C, § 19, charging a dentist
with issuing prescriptions for narcotic drugs without a legitimate med-
ical purpose, guilty verdicts were warranted by evidence that the den-
tist issued almost three hundred prescriptions for narcotic drugs to ten
patients over a short period, that some prescriptions followed office
visits where the only treatment recorded was cleaning or filling or
where no visit had been recorded, that for most of the patients there
was no medical history taken or any physical examination conducted,
nor was there a record of prescriptions written, and that, according to
expert testimony, there was no legitimate dental or medical purpose
for the drugs prescribed for the eight patients whose dental records
were obtained.   [306-307]

INDICTMENT found and returned in the Superior Court
Department on May 16, 1979.

The case was tried before *Connolly,* J.

*Murray P. Reiser* for the defendant.

*Natalea Skvir,* Assistant District Attorney, for the Com-
monwealth.

HALE, C.J.   The defendant, a practicing dentist, appeals
from convictions on two counts of an indictment charging
that he issued prescriptions for controlled substances:   per-
codan in the first count and demerol in the second, the pre-
scriptions "not being issued for a legitimate medical purpose
in the usual course of his professional practice."   See G. L.
c. 94C, § 19(*a*), inserted by St. 1971, c. 1071, § 1.

1. The following is a summary of the evidence introduced
by the close of the Commonwealth's case (see *Common-
wealth* v. *Kelley,* 370 Mass. 147, 149-150 [1976]) which we

deem ample to warrant the jury in finding that the defendant had acted in bad faith rather than for a legitimate medical purpose in issuing numerous prescriptions to ten persons who were at various times dental patients of the defendant.

The defendant issued ninety prescriptions for 464 tablets of percodan and for twenty tablets of demerol to one R.S. over a fifteen-month period, although only ten office visits by R.S. appeared in the defendant's records. During the eleven months beginning with the date of the ninth of these visits, the defendant continued to supply R.S. with prescriptions for percodan, although only one office visit was recorded during that period.

The defendant was queried by a pharmacist employed by a large chain as to the validity of a particular prescription and how much longer prescriptions would be written. The defendant informed the pharmacist that dental work on R.S. would be completed within two weeks, and within three weeks at most. Despite that phone call, the defendant wrote a total of fifty-six more prescriptions for R.S. over the next seven months. We complete the summary of the evidence in the margin.[1]

[1] The defendant issued to one D.B. a supply of prescriptions (sixty-nine for over 400 tablets of percodan) and during one week issued to D.B. four prescriptions for a total of 60 tablets. Only three visits by D.B. for treatment are recorded.

Between August 14, 1978, and March 12, 1979, thirty-four prescriptions were issued to one G.K. for a total of one hundred forty-six percodan and sixteen demerol tablets. Three office visits were recorded, the first being December 2, 1978.

Between June 4, 1978, and January 6, 1979, nineteen prescriptions were issued to one G.H. for a total of eighty-eight percodan tablets. Five office visits were recorded, the last being June 28, 1978.

Between June 10, 1978, and November 27, 1978, fourteen prescriptions for eighty tablets of percodan were issued to one K.G., whose only recorded visit was on June 10, 1978.

Between January 3, 1979, and March 12, 1979, eleven prescriptions for fifty-six percodan and fourteen demerol tablets were issued to one L.M. The dates of her only three recorded visits coincided with the dates of the first three prescriptions.

Between September 27, 1978, and February 28, 1979, thirty percodan and fourteen demerol prescriptions were issued to one A.L. Three office visits were recorded, the first being January 3, 1979.

When queried by an investigating officer, the defendant stated that prescriptions for percodan were written only for post-operative pain. However, there was evidence which showed that some prescriptions followed office visits where the only treatment recorded was cleaning or fillings, or where no visit had been recorded. For most of the patients there was no medical history taken or any physical examination conducted, nor was there a record of prescriptions written. See *Commonwealth* v. *Comins*, 371 Mass. 222, 232-233 (1976). The Commonwealth produced an expert who testified that for eight of the individuals (those for whom dental records were obtained) there was "absolutely no dental or medical indication of the quantity of percodan or demerol for the dental work carried out" and that there was no legitimate dental purpose for giving the prescriptions. The expert also opined that even if one tripled the number of office visits by three of the "patients," there would still be no legitimate dental purpose in prescribing the number of percodan tablets.

Unlike *Hulse* v. *Sheriff of Clark County*, 88 Nev. 393 (1972), upon which the defendant relies, there was evidence in this case of the potency of percodan and demerol and of what amount is considered excessive. We reject the defendant's contention that his acts did not rise to the level of criminal conduct because he was only a sloppy record-keeper who negligently gave prescriptions. It was for the jury to say whether the records reflected all the visits made and treatment given and to infer from the absence of entries in the records that dental treatment was not given to the "patients." See *Johnson* v. *Wilmington Sales, Inc.*, 5 Mass.

---

Between August 5, 1978, and August 28, 1978, seven prescriptions for a total of thirty-two percodan tablets were issued to one M.H., whose only recorded office visit is undated.

Between April 20, 1978, and October 4, 1978, five prescriptions were issued to one P.S. for a total of four percocet and twenty-six demerol tablets. No office visit was recorded.

Between July 26, 1978, and October 11, 1978, four prescriptions were issued to one M.F. for a total of twenty percodan tablets. No office visit was recorded.

App. Ct. 858 (1977). See also 5 Wigmore, Evidence § 1531 (Chadbourn rev. 1974); Liacos, Handbook of Massachusetts Evidence 434-435 (5th ed. 1981 & Supp. 1983). Similarly, in "determining whether the defendant had acted in good or bad faith in giving the prescriptions for which he was convicted, the jury were entitled to consider the words and actions of the defendant throughout the entire course of his dealings with the [patients]." *Commonwealth* v. *Lozano,* 5 Mass. App. Ct. 872, 873 (1977). See *Commonwealth* v. *Comins, supra* at 232-233.

The Commonwealth did its job in presenting sufficient evidence to warrant the jury's verdicts, and the "question whether the defendant exercised his honest professional judgment and acted in good faith or whether he intentionally violated the statute, was a question of fact for the jury to be determined by them as men of practical sense and sound judgment." *Commonwealth* v. *Noble,* 230 Mass. 83, 87-88 (1918).

2. The defendant has waived his objection to the introduction of the Commonwealth's expert testimony. At the defendant's request, this testimony was admitted "subject to a later motion to strike." The defendant failed to make a motion to strike the testimony after it might have become apparent (to him) that an adequate factual basis for the expert testimony was lacking. See *Commonwealth* v. *Prince,* 4 Mass. App. Ct. 799 (1976).

*Judgments affirmed.*