COMMONWEALTH *vs.* RICHARD F. PERRY.

Hampden.   January 11, 1984. — May 11, 1984.

Present: HENNESSEY, C.J., ABRAMS, NOLAN, LYNCH, & O'CONNOR, JJ.

*Controlled Substances. Doctor. Practice, Criminal,* Lesser-included offense. *Words,* "Dispense," "Distribute," "Deliver."

A physician who, without medical justification, prescribes a controlled substance for himself or receives it for his own use pursuant to such a prescription does not "dispense" or "distribute" a controlled substance within the meaning of G. L. c. 94C, §§ 32-32G. [811-813]
An indictment charging the defendant with "manufacturing, dispensing or distribution" of a controlled substance in violation of G. L. c. 94C, §§ 32-32G, also charges, as a lesser included offense, the unauthorized possession of a controlled substance under G. L. c. 94C, § 34. [813-814]

INDICTMENTS found and returned in the Superior Court Department on November 10, 1982.

A motion to dismiss was heard by *Moriarty,* J., and questions of law were reported by him to the Appeals Court. The Supreme Judicial Court ordered direct review on its own initiative.

*Elizabeth Butler Heath* for the defendant.

*Dianne M. Dillon,* Assistant District Attorney, for the Commonwealth.

O'CONNOR, J.   The Commonwealth and the defendant, a physician, stipulated that the defendant issued prescriptions for various drugs named in the indictments with which this case is concerned, that he did so without medical justification, and that in each instance the prescribed drugs were for the defendant's own use. Following the stipulation, a judge of the Superior Court reported two questions concerning the sufficiency of the indictments charging the defendant with violations of the Controlled Substances Act, G. L. c. 94C. We transferred the case to this court on our own motion. We answer that (1) a

physician does not "dispense" or "distribute" a controlled substance within the meaning of G. L. c. 94C, §§ 32-32G, when without medical justification he prescribes a controlled substance for himself or receives it for his own use pursuant to the prescription, and (2) an indictment charging the defendant with "manufacturing, dispensing or distribution" of a controlled substance in violation of G. L. c. 94C, §§ 32-32G, also charges, as a lesser-included offense, the unauthorized possession of a controlled substance under G. L. c. 94C, § 34.

In June, 1982, a grand jury returned five indictments against the defendant. Each indictment charged him with issuing a prescription for a particular controlled substance[1] in violation of G. L. c. 94C, § 19 (*a*), in the period between April 14, 1981, and April 20, 1982. General Laws c. 94C, § 19 (*a*), inserted by St. 1971, c. 1071, § 1, provides that "[a]n order purporting to be a prescription issued not in the usual course of professional treatment or in legitimate and authorized research is not a prescription within the meaning and intent of section one and the person knowingly filling such a purported prescription, as well as the person issuing it, shall be subject to the penalties provided by" the provisions regulating the unauthorized manufacture, distribution, and dispensing of controlled substances.

Pursuant to G. L. c. 111E, § 10, the defendant filed a request for assignment to a drug treatment facility. Under that statute, a defendant who is charged with a drug offense may under certain conditions be assigned to a drug treatment facility "if the court determines that [he] is a drug dependent person who would benefit by treatment." G. L. c. 111E, § 10, inserted by St. 1981, c. 704, § 3. If the administrator of the treatment facility reports "that the defendant successfully completed the treatment program, or if the defendant completes the term of

---

[1] The controlled substances named in the indictments were Percodan, Codeine, and Fiorinal, alleged to be classified as Class B substances, G. L. c. 94C, § 31; Diazepam, referred to as a Class C substance; and paregoric, referred to as a Class E substance. The indictments concerning Percodan and paregoric charged the defendant with issuing more than one prescription over a period of several months.

treatment ordered by the court, the court shall dismiss the charges pending against the defendant." *Id.*

The Commonwealth opposed the defendant's request for assignment to a drug treatment facility. It argued that, although the prescriptions issued by the defendant were solely for his own use, the interests of justice would not be served if the defendant were permitted to take advantage of G. L. c. 111E, § 10. If the defendant completed his treatment program, the Commonwealth contended, the charges against him would then be dismissed, the defendant's medical license would not be revoked, and he could continue to write prescriptions. The Commonwealth also argued that, in writing the prescriptions, the defendant "distributed" controlled substances in violation of G. L. c. 94C, §§ 32-32G, and that G. L. c. 111E, § 10, expressly states that it does not apply to a person charged with violating those sections.

On November 16, 1982, following a psychiatric examination of the defendant, a judge of the Superior Court rejected the Commonwealth's contentions, concluding that commitment of the defendant to a rehabilitation center was "unquestionably the most appropriate, just disposition." The judge also found that "[t]he defendant is a young doctor (with an impeccable record) who suffers from serious health problems and depression, and unwittingly became addicted to drugs which were, in the first instance, properly prescribed for him. The defendant's own efforts to rid himself of his drug dependency led to his discovery and subsequent prosecution." The judge ordered that the defendant be assigned to McLean Hospital initially on an inpatient basis, to "be changed to an outpatient basis at such time as the hospital determines is appropriate," for one year. In accordance with G. L. c. 111E, § 10, the criminal proceedings against him were stayed for the period of assignment.

At some time in November, 1982, prior to the judge's assignment order, but perhaps in anticipation of it, the district attorney again presented evidence against the defendant to another grand jury. That grand jury returned ten indictments against the defendant based on evidence which was substantially the same as

that presented to the grand jury that returned the indictments in June. Except for minor changes in the dates involved, the first five of the November indictments were identical to the five indictments returned in June. The second group of five indictments referred to the same prescriptions which were the subject of the first group, but charged that the defendant "unlawfully did knowingly and intentionally manufacture, distribute or dispense" the five controlled substances in violation of G. L. c. 94C.

The defendant moved to dismiss the November indictments. A judge of the Superior Court dismissed the first five indictments as duplicative of the earlier June indictments. The earlier indictments were still pending; proceedings had merely been stayed during the defendant's treatment. With respect to the second group of five indictments, the judge reported the following questions to the Appeals Court:

"(1) Does the issuance by a physician of a prescription for a controlled substance to himself and for his own use, but without medical justification, or the receipt by him of such controlled substance in accordance with the prescription constitute the 'manufacture, dispensing or distribution' of that substance under G. L. c. 94C, §§ 32-32G?

"(2) If the answer to Question (1) is 'NO,' may the court dismiss so much of [the second group of indictments] as charge 'manufacturing, dispensing or distribution,' and allow the indictments to stand as charging the defendant with simple possession of the substances named in the indictments?"

We assume that the words in the first reported question, "issuance by a physician of a prescription for a controlled substance to himself," refer not to the mere writing of a prescription, for which there could be no criminal liability, but rather to the delivery of a prescription to a pharmacist, or to an agent of the physician who could then take the prescription to a pharmacist. Our task, then, with respect to the first question, is to construe the words, "dispense" and "distribute" as those words are used in G. L. c. 94C, §§ 32-32G.[2]

---

[2] Sections 32-32D of G. L. c. 94C, as amended, prescribe penalties for any person who "knowingly or intentionally manufactures, distributes, dis-

General Laws c. 94C, § 1, as amended by St. 1972, c. 806, § 3, provides that the word "[d]ispense," as used in that chapter, means "to deliver a controlled substance to an ultimate user . . . by a practitioner . . . including the prescribing . . . of a controlled substance." General Laws c. 94C, § 1, as amended by St. 1973, c. 1190, § 6, defines "[u]ltimate user" as "a person who lawfully possesses a controlled substance," and includes "physician" within the definition of "[p]ractitioner." Therefore, a physician "dispenses," within the meaning of our controlled substances statute, only if he or she prescribes a controlled substance for someone whose possession of the substance will be lawful.[3] A physician prescribing for himself without medical justification does not lawfully possess the prescribed substances.

"Distribute" is defined by G. L. c. 94C, § 1, as "to deliver other than by administering or dispensing a controlled substance." "Deliver," in turn, is defined as "to transfer, whether by actual or constructive transfer, a controlled substance *from one person to another*, whether or not there is an agency rela-

---

penses, or possesses with intent to manufacture, distribute or dispense a controlled substance." Sections 32, 32A, 32B, 32C, and 32D, apply respectively to controlled substances in classes A, B, C, D, and E, as defined in § 31. There is no contention that the defendant manufactured a controlled substance in this case.

Sections 32E-32G refer to unauthorized trafficking in certain controlled substances, unauthorized manufacture, dispensing, or distribution of Class A controlled substances to minors, and unauthorized manufacture, dispensing, or distribution of counterfeit substances, respectively.

[3] General Laws c. 94C, §§ 32-32G, standing alone, would appear to prohibit the delivery by a physician to a patient of medically necessary prescriptions in all instances. However, those sections must be read in conjunction with G. L. c. 94C, §§ 7, 9, 18, 19, 24, 25, and 26. When read together, the several sections provide that a registered physician is authorized to prescribe medically necessary controlled substances if required procedures are followed, but not otherwise. The primary purpose of the prohibition against dispensing is to require practitioners to register with the Commissioner of Public Health, G. L. c. 94C, § 7, and to keep records and maintain inventories. G. L. c. 94C, § 15. Compare *United States* v. *Badia*, 490 F.2d 296, 298 n.4 (1st Cir. 1973) ("the reason Congress included the term 'dispense' in § 841(a)(1) [of the Comprehensive Drug Abuse Prevention and Control Act of 1970, 21 U.S.C. § 801 et seq. (1982)] was to compel physicians to become properly licensed").

tionship" (emphasis supplied). The Commonwealth argues that the transfer "from one person to another" occurs when the pharmacist delivers the controlled substance, pursuant to the prescription, to the physician or the physician's agent. We reject the Commonwealth's argument. The argument attributes to the physician the delivery by the pharmacist, with the result that the delivery is made by, and to, the physician. That is not a transfer "from one person to another." Indeed, a person cannot be both transferor and transferee in one transaction.

Our conclusion is not based on niceties of language alone. We are mindful of the principle that criminal statutes must be construed strictly against the Commonwealth. Also, we have considered carefully what we perceive to be the policy of the Legislature in enacting G. L. c. 94C. The Legislature has carefully distinguished between the unauthorized possession of controlled substances, G. L. c. 94C, § 34, and either their manufacture, dispensing, or distribution, G. L. c. 94C, §§ 32-32D, or unauthorized trafficking in them, G. L. c. 94C, § 32E. Simple possession of controlled substances is clearly viewed by the Legislature as the least serious of those offenses. It is a fair inference that the Legislature has not considered a person who only possesses controlled substances as presenting the same threat to society as those who would prey on the community by making them available to others. A physician who prescribes and receives controlled substances solely to satisfy his own addiction falls within the former category. We answer the first reported question, "No."

We turn now to the second reported question, which requires us to determine whether "simple possession" is a lesser-included offense of "manufacturing, dispensing or distribution" of controlled substances. A crime is a lesser-included offense of another crime if each of its elements is also an element of the other crime. *Commonwealth* v. *Jones,* 382 Mass. 387, 393 (1981). In *Commonwealth v. Gagnon,* 387 Mass. 768, 769 (1982), cert. denied, 461 U.S. 921, and 464 U.S. 815 (1983), we held that the crime of possession of heroin, G. L. c. 94C, § 34, was charged as a lesser-included offense in an indictment that alleged that the defendants did "knowingly or intentionally

manufacture, distribute, dispense, or possess with intent to manufacture, distribute, or dispense a controlled substance to wit: Heroin, a class A substance." We said that "[u]nder [that] indictment one who knowingly or intentionally manufactures, distributes, or dispenses heroin possesses the heroin, actually or constructively." *Id.* We think that on this issue there is no relevant distinction between *Commonwealth* v. *Gagnon, supra,* and the present case.

Accordingly, we answer the second question, "Yes," and we remand the case to the Superior Court for further proceedings consistent with this opinion.