Commonwealth *vs.* Michael R. Brown.

No. 07-P-1631.

Barnstable. October 6, 2008. - April 15, 2009.

Present: Rapoza, C.J., Dreben, & Mills, JJ.

Further appellate review granted, 454 Mass. 1107 (2009).

*Controlled Substances. Doctor,* Controlled substances. *Search and Seizure,* Electronic surveillance. *Words,* "Dispense," "Ultimate user."

Evidence at a criminal trial was sufficient to demonstrate that the defendant, a physician who issued to patients prescriptions that were not written in good faith for legitimate medical purposes, illegally dispensed controlled substances to ultimate users within the meaning of G. L. c. 94C, §§ 32A(*a*) and 32B(*a*). [76-84] Mills, J., dissenting.

Evidence at a criminal trial was sufficient to convict the defendant of submitting false medical claims in violation of G. L. c. 118E, § 40(2). [84-85] Mills, J., concurring.

A trial court judge did not err in denying a criminal defendant's motion to suppress an audio and video recording of the defendant obtained as part of a Federal criminal investigation. [85] Mills, J., concurring.

Indictments found and returned in the Superior Court Department on April 25, 2006.

A pretrial motion to suppress evidence was heard by *Gary A. Nickerson,* J.; seven cases were tried before him, and subsequent to the jury trial, the remaining two cases were heard by him.

*Russell J. Redgate* for the defendant.

*Scott A. Katz,* Assistant Attorney General (*Steven L. Hoffman,* Assistant Attorney General, with him) for the Commonwealth.

Dreben, J. The defendant, a physician, appeals from his convictions on multiple charges of illegally prescribing controlled substances in violation of G. L. c. 94C, §§ 32A(*a*) and 32B(*a*),[1]

---

[1]The headings of the indictments charging violation of G. L. c. 94C contained the term "Illegal Prescribing Class B [or C]" and listed the specific drug. The text of each indictment stated that on a certain date the defendant "did knowingly or intentionally distribute or dispense [the specific drug] in violation of

from his convictions of submitting false medical claims in violation of G. L. c. 118E, § 40(2), and from his conviction of larceny of an amount in excess of $250.[2,3] All except two of the indictments were tried to a jury. Subsequent to the jury trial, the same judge heard the remaining two indictments. These two charged drug offenses and were dependent on the admission of an audio-video recording that the defendant claims was inadmissible.[4] We affirm the convictions.

1. *Violation of G. L. c. 94C on indictments tried to a jury.* Pointing to the statutory definitions of "dispense" and "ultimate user" in G. L. c. 94C, § 1, the defendant claims that his convictions were not supported by the evidence. He does not seriously dispute that there was evidence that he prescribed the drugs and that the prescriptions were not written in good faith for legitimate medical purposes.[5] Rather, he asserts what he terms an issue of

[G. L. c. 94C, § 32A(*a*) or § 32B(*a*)]."

[2]The basis for the larceny conviction was that the defendant falsely informed Medicaid that certain office visits by patients were legitimate. The defendant does not make a separate argument as to the larceny conviction.

[3]The defendant was also convicted of possession of controlled substances. He does not argue that this conviction should be reversed.

[4]Having scant hope of an acquittal on the two jury-waived offenses in the face of the audio-video recording showing his improper actions, the defendant entered into a "Statement of Agreed Facts" that, he claims, would preserve his right to appeal the denial of his motion to suppress the audio-video recording. In the statement of agreed facts the defendant admitted that he had prescribed OxyContin and hydrocodone to a named patient for several months with the understanding that the patient would fill the prescriptions and give some of the tablets to the defendant. See G. L. c. 94C, § 19(*b*) ("No prescription shall be issued in order for a practitioner to obtain controlled substances for supplying the practitioner for the purpose of general dispensing to patients"). The defendant's statement also acknowledged that a specific prescription was not written in good faith for a legitimate medical purpose.

The defendant's appeal from the convictions tried to a jury and the appeal from the bench trial convictions were consolidated.

[5]The charges which resulted in convictions by the jury involved patients who were given prescriptions for OxyContin, roxicodone, or other narcotics. After examining the defendant's records, two physicians (experts) testified that the prescriptions were not issued in good faith or for a legitimate medical purpose. This conclusion was based on the facts that in some instances the defendant prescribed oxycodone to patients even after they tested positive for other illegal drugs and negative for oxycodone. He prescribed narcotics for other patients whom he knew had been heroin abusers or whom he knew had been seeking drugs on the street or from a hospital. He failed to test one

law, namely, that he cannot be convicted of illegally dispensing the drugs, under the definitions in § 1 of c. 94C. Those definitions in relevant part state:

> " 'Dispense', [means] to deliver a controlled substance to an ultimate user or research subject . . . by a practitioner or pursuant to the order of a practitioner, including the *prescribing* and administering of a controlled substance. . ." (emphasis supplied).

> " 'Ultimate user', [means] a person who lawfully possesses a controlled substance for his own use or for the use of a member of his household. . . ."

G. L. c. 94C, § 1, as amended through St. 1972, c. 806, § 3; G. L. c. 94C, § 1, inserted by St. 1971, c. 1071, § 1.

The defendant argues that the evidence is insufficient to support the convictions for false prescribing by unlawfully "dispensing" controlled substances because the evidence fails to establish that the "ultimate users" were lawful possessors of such substances.[6] Although the statute presents difficulties when only the definitions of "ultimate user" and "dispense"[7] are examined, the defendant's conclusion is not in accord with the interpretation given to the statute by our cases.

Recognizing that G. L. c. 94C poses certain problems, our cases emphasize that the separate provisions of the statute must be read in context with its other provisions in order to construe

---

patient for drugs at all and tested three of them only after a visit from the Medicaid fraud control unit. There was testimony from a former receptionist that he could on average see fifty to eighty patients a day. When asked how many patients he saw, the defendant answered, "It can vary from 20 to 50, occasionally 70."

[6]The defendant raised this issue several times by motion for a required finding of not guilty after the Commonwealth's opening, and after the Commonwealth rested. He also objected to the judge's charge. In his motions, he argued that the defendant also could not be found to have "distributed" controlled substances because "distribution" requires a finding of possession either actual or constructive, and there was no evidence that he possessed the drugs. At the defendant's request the judge, after his main jury charge, specifically told the jury that the offense with which the defendant was charged was limited to "dispensing" and that the word "distributing" was surplusage.

[7]In other sections of G. L. c. 94C, including other definitions, the use of the term "ultimate user" as defined in § 1 may be appropriate. See, e.g., G. L. c. 94C, §§ 7(*e*), 9(*b*), 9(*c*), 22.

the statute as a harmonious whole. General Laws c. 94C, § 32A(*a*), as amended through St. 1982, c. 650, § 7, the statute the defendant principally is charged with violating, provides:

> "(*a*) Any person who knowingly or intentionally manufactures, distributes, dispenses, or possesses with intent to manufacture, distribute or dispense a controlled substance in Class B of section thirty-one shall be punished by imprisonment in the state prison for not more than ten years, or in a jail or house of correction for not more than two and one-half years, or by a fine of not less than one thousand nor more than ten thousand dollars, or both such fine and imprisonment."[8]

As noted in *Commonwealth* v. *Perry*, 391 Mass. 808, 812 n.3 (1984):

> "General Laws c. 94C, §§ 32-32G, standing alone, would appear to prohibit the delivery by a physician to a patient of medically necessary prescriptions in all instances. However, those sections must be read in conjunction with G. L. c. 94C, §§ 7, 9, 18, 19, 24, 25, and 26. When read together, the several sections provide that a registered physician is authorized to prescribe medically necessary controlled substances if required procedures are followed, but not otherwise."

See *Commonwealth* v. *Kobrin*, 72 Mass. App. Ct. 589, 595 (2008).

In *Commonwealth* v. *Comins*, 371 Mass. 222, 226 (1976), cert. denied, 430 U.S. 946 (1977), the defendant made an argument similar to the contention of the present defendant. Pointing to the statutory definitions, he argued that a practitioner can be charged with dispensing only when the delivery is a lawful one. *Id.* at 225. The court, however, noted, "If 'dispensing' only can be a lawful act under G. L. c. 94C, it is difficult to explain why the word appears in § 32 to describe unlawful conduct." *Id.* at 226. Rejecting the defendant's claim and emphasizing

---

[8]Three indictments charged the defendant with multiple counts of violating G. L. c. 94C, § 32A(*a*). One indictment charged the defendant with a single count of violating G. L. c. 94C, § 32B(*a*). That statute, except for the punishment, is identical to § 32A(*a*).

that the word "lawful," while originally contained in the statutory definition, was deleted by the Legislature in 1972, the court held that "[a] physician who issues a prescription not intending to treat a patient's condition in the usual course of his practice of medicine does not issue a valid prescription, and he thus violates § 32." *Id.* at 232. "A physician who unlawfully issues a prescription for a controlled substance may 'dispense' a controlled substance. . . . There is nothing in [the] definition which indicates that the controlled substance or the prescription must be delivered lawfully." *Id.* at 226. The court then gave an expansive interpretation of "ultimate user," holding that undercover police officers given unlawful prescriptions, i.e., prescriptions not for legitimate medical purposes, were in lawful possession of the drugs. *Id.* at 230-231.

Subsequently, the court in *Commonwealth* v. *Chatfield-Taylor*, 399 Mass. 1, 4 n.4 (1987), stated, "Both [G. L. c. 94C,] §§ 19 and 32A[,] are involved in the crime of unlawful dispensing of a controlled substance." Section 19(*a*), as amended through St. 1982, c. 650, § 1, provides:

> "A prescription for a controlled substance to be valid shall be issued for a legitimate medical purpose by a practitioner acting in the usual course of his professional practice. The responsibility for the proper prescribing and dispensing of controlled substances shall be upon the prescribing practitioner, but a corresponding responsibility shall rest with the pharmacist who fills the prescription. An order purporting to be a prescription issued not in the usual course of professional treatment or in legitimate and authorized research is not a prescription within the meaning and intent of section one and the person knowingly filling such a purported prescription, as well as the person issuing it, shall be subject to the penalties provided by sections thirty-two, thirty-two A, thirty-two B, thirty-two C, thirty-two D, thirty-two E, thirty-two F, thirty-two G, and thirty-two H, as applicable."

Without mention of the term "ultimate user," the court in *Chatfield-Taylor* explicitly stated that "[t]he essential elements of the crime of unlawful dispensing of a controlled substance are set out in G. L. c. 94C, § 19" (footnote omitted). 399 Mass.

at 4. *Commonwealth* v. *Pike*, 430 Mass. 317, 318, 321 (1999), is to the same effect.

The Massachusetts Superior Court Criminal Practice Jury Instructions § 2.49.5, Supplemental Instruction (c) (Mass. Continuing Legal Educ. 1999 & Supp. 2003), are in accord, stating:

> "The word 'dispense' means the unlawful delivery of a controlled substance to an ultimate user by a practitioner, or pursuant to the order of a practitioner, including the prescribing and administering of a controlled substance."

The jury instructions do not define ultimate user. The comment to the instruction, other than setting forth the full definition of dispense in G. L. c. 94C, § 1, refers only to *Commonwealth* v. *Pike*, 430 Mass. at 321-322, and to note 3 of *Commonwealth* v. *Perry*, 391 Mass. at 812, set forth above, to the effect that when read together the several sections of the statute provide that a registered physician is authorized to prescribe medically necessary controlled substances if required procedures are followed, but not otherwise. "Dispense" in our cases has thus been construed to encompass the elements in G. L. c. 94C, § 19, without reference to the definition of ultimate user.

This also is the prevailing view under the Federal law. The Federal Controlled Substance Act defines "dispense"[9] in language more problematic than the Massachusetts definition and has a very similar definition for "ultimate user."[10] See 21 U.S.C. § 802 (10), (27) (2006). Both the Massachusetts statute and the Federal statute define "distribute" as to deliver, other than by administering or dispensing, a controlled substance. See G. L. c. 94C, § 1; 21 U.S.C. § 802(11) (2006).[11]

---

[9] "The term 'dispense' means to deliver a controlled substance to an ultimate user or research subject by, or pursuant to the *lawful* order of, a practitioner, including the prescribing and administering of a controlled substance . . . . The term 'dispenser' means a practitioner who so delivers a controlled substance to an ultimate user or research subject." (Emphasis supplied.) 21 U.S.C. § 802(10) (2006).

[10] "The term 'ultimate user' means a person who has lawfully obtained, and who possesses, a controlled substance for his own use or for the use of a member of his household . . . ." 21 U.S.C. § 802(27) (2006).

[11] It may be that the dissent is suggesting that the defendant should have been charged with distribution.

Without discussing the form of the indictment that charged the defendant with "knowing and unlawful distribution and dispensation" of controlled substances, the United States Supreme Court in *United States* v. *Moore*, 423 U.S. 122, 124 (1975), held that the defendant, a registered physician, could be prosecuted under 21 U.S.C. § 841 for dispensing or distributing controlled substances. Prior to that decision, the United States Courts of Appeals for the First and the Ninth Circuits, based on the term "lawful" in the Federal statutory definition of "dispense," see note 9, *supra*, held that "distribution" is the offense committed by a defendant physician who writes prescriptions not in the course of professional medical practice. See *United States* v. *Badia*, 490 F.2d 296, 298 (1st Cir. 1973); *United States* v. *Black*, 512 F.2d 864, 866 (9th Cir. 1975). Later cases in both circuits diluted the distinction. See *United States* v. *Limberopoulos*, 26 F.3d 245, 247 (1st Cir. 1994) (conspiring to dispense); *United States* v. *Feingold*, 454 F.3d 1001, 1003, 1010-1011 (9th Cir.), cert. denied, 549 U.S. 1067 (2006) (convicted of distribution but broad language). The majority of United States Courts of Appeals that have addressed the issue have affirmed convictions in cases charging "distribution" as well as in cases charging "dispensing" or have upheld cases charging "dispensing or distribution."[12]

---

[12]The United States Court of Appeals for the Second Circuit upheld a conviction charging a doctor with "conspiracy to dispense, distribute and possess with intent to distribute" a controlled substance. The court noted that "it may well be that there is no significant difference between dispensation and distribution" under 21 U.S.C. § 841 or § 846 for conspiracy to distribute or dispense, but there is a difference for purposes of § 860 which only speaks of distribution within a school zone. (That count of the conviction was vacated.) *United States* v. *Ekinci*, 101 F.3d 838, 843 (2d Cir. 1996).

The United States Court of Appeals for the Third Circuit has upheld convictions of a physician for dispensing, noting that the definition of ultimate user cannot stand by itself and must be construed in the context of 21 U.S.C. § 841(a) and congressional intent. *United States* v. *Tighe*, 551 F.2d 18, 20-21 (3d Cir.), cert. denied, 434 U.S. 823 (1977). It has also upheld convictions of a physician charged with distribution. *United States* v. *Polan*, 970 F.2d 1280, 1283 (3d Cir. 1992), cert. denied, 507 U.S. 953 (1993).

The United States Court of Appeals for the Fourth Circuit, in a case in which the defendant-physician was indicted for "distributing and dispensing" controlled substances, listed the elements of the offense substantially in accord with Federal Jury Instruction 56-15. *United States* v. *Tran Trong Cuong*, 18 F.3d 1132, 1141 (1994).

The United States Court of Appeals for the Fifth Circuit upheld the dismissal

The model Federal jury instructions for dispensing, see 3 Sand, Modern Federal Jury Instructions — Criminal 56-15 (2008) (set forth in the margin[13]), contain the words "dispensed or distri-

of an indictment charging the defendant-physician with distribution, saying that the proper charge was unlawful dispensing of a controlled substance. *United States* v. *Leigh,* 487 F.2d 206 (5th Cir. 1973). That court upheld, however, a conviction for distribution where the indictment charged that the distribution was "unlawful" and "for other than a legitimate medical purpose and not in the usual course of medical practice." *United States* v. *Harrison,* 651 F.2d 353, 354 (5th Cir.), cert. denied, 454 U.S. 1126 (1981).

The Sixth Circuit upheld convictions of distribution, *United States* v. *Ellzey,* 527 F.2d 1306, 1308 (6th Cir. 1976), stating that the distinction between dispensing and distributing is "merely a play on words." The same court has also upheld a conviction of aiding and abetting in illegally dispensing and distributing a controlled substance. *United States* v. *Wells,* 211 F.3d 988, 993, 999-1000 (6th Cir. 2000).

The Seventh Circuit upheld convictions of dispensing. *United States* v. *Roya,* 574 F.2d 386, 393-394 (7th Cir.), cert. denied, 439 U.S. 857 (1978). It has also upheld convictions of distribution, noting that although the defendant-pharmacist was indicted and convicted of a different offense from the one he committed, "there is no difference in proof, penalty, etc. between the crimes of distributing and of dispensing a controlled substance. The only difference is nomenclature." *United States* v. *Nechy,* 827 F.2d 1161, 1169 (7th Cir. 1987).

The Eighth Circuit has upheld a conviction of distribution but cited *United States* v. *Tran Trong Cuong, supra,* to the effect that a doctor is acting outside the bounds of professional medical practice when he assists another in the maintenance of a drug habit or dispenses controlled substances for other than a legitimate medical purpose. *United States* v. *Katz,* 445 F.3d 1023, 1028 (8th Cir.), cert. denied, 549 U.S. 956 (2006).

The Tenth Circuit upheld a conviction of a physician charged with distribution, saying the defendant "seeks to create a hyper-technical distinction between the terms *dispense* and *distribute* which have no functional difference in . . . this case [prescriptions issued for no apparent medical reason]. [Section] 841 [is] plainly intended to reach any person who deals in controlled substances without authorization." *United States* v. *Fellman,* 549 F.2d 181, 182 (10th Cir. 1977). See *United States* v. *Genser,* 710 F.2d 1426, 1429-1430, 1431 (10th Cir. 1983) ("distribution" and "dispensation" same offense for purposes of double jeopardy clause; the only difference is that dispensing must be by a practitioner).

The Eleventh Circuit upheld an indictment of a pharmacist for dispensing. *United States* v. *Steele,* 147 F.3d 1316, 1317 (11th Cir. 1998), cert denied, 528 U.S. 933 (1999). It also upheld a conviction of a physician of unlawfully dispensing controlled substances. *United States* v. *Williams,* 445 F.3d 1302, 1304, 1307-1308 (11th Cir. 2006), overruled in part on other grounds by *United States* v. *Lewis,* 492 F.3d 1219 (11th Cir. 2007).

[13]"Elements of the Offense

"Under the Drug Abuse Prevention and Control Act, someone who is a

buted," but do not mention "ultimate user." The comment to the instruction states: "The better view, and the one adopted here, is that dispensing is the distribution of drugs by a practitioner, and so, that a practitioner can be charged with either dispensing or distributing. Thus, as far as practitioners are concerned, 'the terms dispense and distribute . . . have no functional difference.' " *Id.* at 56-40, quoting from *United States* v. *Fellman*, 549 F.2d 181, 182 (10th Cir. 1977). In *Commonwealth* v. *Comins*, 371 Mass. at 227 n.6, after discussing Federal cases that distinguish between distributing and dispensing, the Supreme Judicial Court expressed a similar view, stating: "[T]he choice of words should not be permitted to become crucial, and judicial time can be better spent trying to resolve more important questions."

After considering both the Massachusetts and Federal cases, we conclude that the most rational construction of this problematic statute,[14] and the one which best furthers the intent of the

---

'practitioner' is authorized to prescribe drugs. A 'practitioner' is defined as

> "a physician, dentist . . . pharmacist . . . or other person licensed, registered, or otherwise permitted by the United States or the jurisdiction in which he practices . . . to distribute, dispense [or] administer [drugs] in the course of professional practice or research.

> "Thus, a doctor (*or* dentist or pharmacist) who, in good faith, writes prescriptions for (*or* dispenses) drugs in the regular course of a legitimate professional practice is protected from prosecution under the statute. But doctors who act outside the usual course of professional practice and prescribe or dispense drugs for no legitimate medical purpose may be guilty of violating the law.

> "Specifically, in order to prove this charge against the defendant, the government must establish beyond a reasonable doubt each of the following elements of the crime:

> "First, that the defendant dispensed or distributed narcotics;

> "Second, that the defendant did so knowingly and intentionally; and

> "Third, that the defendant dispensed the drug other than for a legitimate medical purpose and not in the usual course of medical practice."

[14]"When the meaning of any particular section or clause of a statute is questioned, it is proper, no doubt, to look into the other parts of the statute; otherwise the different sections of the same statute might be so construed as to be repugnant, and the intention of the legislature might be defeated. And if, upon examination the general meaning and object of the statute should be

Legislature, is to construe G. L. c. 94C, § 19, which deals comprehensively with prescriptions, as an amplification of the words "including the prescribing . . . of a controlled substance," contained in the definition of "dispense." As stated by our cases, § 19 sets forth the elements of the offense of dispensing in the circumstances of physicians writing prescriptions for other than a legitimate medical purpose.[15]

The defendant may not claim prejudice by this construction. The indictments were clear and sufficient. See *Commonwealth v. Comins,* 371 Mass. at 224-225; G. L. c. 277, § 38. The defendant's actions were unlawful under G. L. c. 94C, § 19. Whatever the label, the defendant knew which of his actions were involved, and the Commonwealth's theory was evident from the start. Cf. *Commonwealth v. De La Cruz,* 15 Mass. App. Ct. 52, 57 (1982) (no possible risk of a miscarriage of justice because indictments alleged distribution rather than dispensing).[16]

2. *Medicaid violations.* As the defendant points out in his brief, the "Medicaid Fraud" indictments depend upon the "False Prescribing" indictments. Accordingly, since we have upheld

---

found inconsistent with the literal import of any particular clause or section, such clause or section must, if possible, be construed according to the spirit of the act." *Commonwealth v. Neiman,* 396 Mass. 754, 756-757 (1986), quoting from *Holbrook v. Holbrook,* 1 Pick. 248, 250 (1823). See *United States v. Moore,* 423 U.S. at 145, quoting from *United States v. Brown,* 333 U.S. 18, 25-26 (1948) ("canon in favor of strict construction [of criminal statutes] is not an inexorable command to override common sense and evident statutory purpose"). See also 1A Singer, Sutherland Statutory Construction § 27.2, at 627-628 (6th ed. 2002 & Supp. 2007) ("[C]ourts are not bound to follow a statutory definition where obvious incongruities in the statute would thereby be created, or where one of the major purposes of the legislation would be defeated or destroyed").

[15]As in *Commonwealth v. Comins, supra,* we need not decide whether the defendant also may be charged with distribution.

[16]There is a minor matter that should be mentioned. The defendant lays stress on a statement in *Commonwealth v. Perry,* 391 Mass. at 812, that "a physician 'dispenses,' within the meaning of our controlled substances statute, only if he or she prescribes a controlled substance for someone whose possession of the substance will be lawful." The statement, however, was made in the context of deciding that a physician who gives himself a prescription may be convicted only of possession rather than distributing or dispensing. We do not consider the statement, taken in context, as precluding our analysis. It is significant that note 3 in *Perry,* cited *supra* at 78, pointing out that the provisions of the statute have to be read in context with the other provisions of the act, was placed immediately following that statement.

those convictions in part 1 of this opinion, the Medicaid fraud convictions as well as the larceny conviction are affirmed.

3. *Motion to suppress audio-video recording.* The recording in question was not in evidence at the jury trial, but was only in evidence for the bench trial. The motion judge (who was also the trial judge) found that the recording of the defendant made on July 1, 2005, was obtained as part of an investigation that "was [F]ederally run from start to finish." His subsidiary findings support this ultimate finding and were not clearly erroneous. Accordingly, he was correct in ruling that the admissibility of the tape was governed by *Commonwealth* v. *Gonzalez,* 426 Mass. 313, 314 (1997).[17]

*Judgments affirmed.*

MILLS, J. (concurring in part and dissenting in part). I agree with the majority that the defendant's convictions for Medicaid fraud and larceny should stand, and that his motion to suppress was properly denied. I must respectfully dissent, however, from the portion of the majority opinion that affirms the defendant's convictions under G. L. c. 94C, §§ 32A(*a*) and 32B(*a*). In my view, the express text of G. L. c. 94C, § 1, precludes a ruling that the crimes of dispensing and distributing are interchangeable.[1] Massachusetts cases addressing that point directly are in agreement. Here, whether correctly or otherwise, the illegal prescribing indictments were presented to the jury strictly as dispensing charges.[2] Unambiguous statutory text and pertinent Massachusetts case law are in accord that dispensing, by defini-

---

[17]We see no need to discuss whether there is a difference between the audio and video portions of the tape. See *Commonwealth* v. *Wright,* 61 Mass. App. Ct. 790, 791 n.1 (2004).

[1]The offenses are, very much to the contrary, mutually exclusive. The statute defines "distribute" as "to deliver other than by administering or dispensing . . . ." G. L. c. 94C, § 1.

[2]Addressing the jury, the judge said: "[Y]ou'll see language in [the indictments] about an allegation that the Defendant did dispense or distribute; and you may have noted in my elements as I listed them, I talked only about dispensing. That word distribute is surplus. There is a technical definition of distribute that may apply in other types of drug law crimes. It's not of concern here in our case."

tion, does not occur unless the recipient of the controlled substance belongs to a narrow, statutorily defined, class of people. That requirement may indeed be hypertechnical. It remains, however, an element of the offense presented to the jury. Moreover, as the majority acknowledges, defense counsel assiduously brought this point to the attention of the prosecutor and trial judge.

On appeal, the defendant contends that the evidence at trial was insufficient to prove that those who received the defendant's supposed prescriptions belonged to the class of people to whom controlled substances have the capacity to be dispensed, and that dispensing therefore had not been proved beyond a reasonable doubt. I agree. The Commonwealth presented no evidence directly on the point, and the evidence that it presented on other points, where relevant, tended to show that the recipients of the defendant's false prescriptions were not people to whom the delivery of controlled substances would constitute dispensing as that term is defined by statute. Neither the prosecutor nor the judge acknowledged the statutory definition of dispensing, and despite the defendant's objections the jury were not instructed that the word carried a specialized meaning distinct from that which it has in everyday parlance. For these reasons, I would reverse the illegal prescribing convictions for want of legally sufficient evidence. Even if the evidence were sufficient, I would set aside the verdicts on the illegal prescribing charges and remand for a new trial, as the jury instructions provided in this case omitted an element required to establish the crime of dispensing. See *Commonwealth* v. *Azar*, 435 Mass. 675, 689 (2002). In turn, I shall discuss the statutory definition of dispensing and then explain why, in my view, the construction adopted by the majority is inconsistent not only with the text of the statute itself, but also with applicable Massachusetts law.

1. *Definition of dispensing.* The defendant was charged with violating G. L. c. 94C, §§ 32A and 32B. These sections criminalize *all* knowing or intentional manufacture, distribution, or dispensation of certain controlled substances, along with the possession of these substances with an intent to manufacture, distribute, or dispense them. Section 19(*a*) of G. L. c. 94C, inserted by St. 1971, c. 1071, § 1, exempts from criminal liability all

dispensing that occurs by means of a prescription, which by the § 19 definition is "issued for a legitimate medical purpose by a practitioner acting in the usual course of his professional practice."[3]

Manufacturing, distributing, and dispensing each are terms of art defined in G. L. c. 94C, § 1. For our purposes, any delivery that is not a dispensation is a distribution.[4] To dispense is "to deliver a controlled substance to an ultimate user or research subject or to the agent of an ultimate user or research subject by a practitioner or pursuant to the order of a practitioner, including the prescribing and administering of a controlled substance and the packing, labeling, or compounding necessary for such delivery."[5] G. L. c. 94C, § 1, as amended through St. 1972, c. 806, § 3. Dispensing via delivery to a research subject or to an agent of any kind shall not be discussed further, as there is no evidence that any such delivery occurred in this case. Therefore, if the defendant dispensed, he must have done so to an "ultimate user."[6] An ultimate user, as defined by § 1, is "a person who *lawfully*

---

[3]The Commonwealth clearly met its burden of proving that the § 19 exemption did not apply, as there was abundant evidence that the purported prescriptions were not issued with an intent to advance a valid medical purpose.

[4]See note 1, *supra.* I take no position whether the defendant should have been charged with dispensing, distributing, or some combination of both, as that determination would require information beyond the scope of the record. Such confusion and uncertainty can be eliminated altogether by bringing prosecutions like the present under G. L. c. 94C, § 19, which incorporates by reference the penalties set forth in G. L. c. 94C, §§ 32, 32A, 32B, 32C, 32D, 32E, 32F, 32G, and 32H, as applicable, and does not implicate the dispensing-distributing dichotomy.

[5]Unlike the majority, I do not read the final two clauses of the definition — i.e., those addressing prescribing, administering, packing, labeling, and compounding — to expand, in any way, the more general definition set out by the preceding clauses. As the prefatory word "including" indicates, these clauses merely list some common instances of dispensing that are entirely consistent with the general definition. The clauses do not expand the concept of dispensing to include actions not covered by the general definition.

The majority emphasizes that the definition of dispensing expressly includes prescribing. While true, that observation is inapposite because, as the majority acknowledges, the defendant issued no prescriptions within the meaning of the statute. That conclusion is compelled by G. L. c. 94C, § 19, which states, in relevant part: "An order purporting to be a prescription issued not in the usual course of professional treatment or in legitimate and authorized research is not a prescription within the meaning and intent of [§ 1] . . . ."

[6]The rationale for the decidedly counterintuitive ultimate user (or research

possesses a controlled substance for his own use or the use of [specified others]" (emphasis supplied).

The defendant argues that the Commonwealth's own evidence established that the patients to whom the defendant allegedly dispensed were not lawful possessors, and therefore could not have been ultimate users. The result, then, would be that no dispensing had occurred. The defendant contends that the patients could not have been lawful possessors because G. L. c. 94C, § 33(*b*), as amended through St. 1974, c. 102, renders it criminal to "knowingly or intentionally acquire or obtain possession of a controlled substance by means of forgery, fraud, deception or subterfuge, including . . . nondisclosure of a material fact in order to obtain a controlled substance from a practitioner." There is evidence suggesting such machinations by some of the patients. But, more to the point, the burden here is on the Commonwealth, which ignored the necessary element and, consequently, offered neither such evidence below nor argument here, so that the record does not permit a finding that any of the patients to whom the defendant allegedly dispensed would have been a lawful recipient (and, hence, an ultimate user) of the controlled substances at issue. *Commonwealth* v. *Latimore*, 378 Mass. 671, 677-678 (1979). As such, the convictions for dispensing are not supported by the evidence and ought to be reversed.

2. *Construction of G. L. c. 94C.* As an initial matter, I agree with the majority that the various sections of G. L. c. 94C, when read together, make it clear that "a registered physician is authorized to prescribe medically necessary controlled substances if required procedures are followed, but not otherwise." *Ante* at 80. However, it does not therefore follow that all conceivable transgressions of that rule constitute dispensing, which has an unambiguously particularized meaning. Some transgressions

subject or agent) element is elucidated in *Commonwealth* v. *Perry*, 391 Mass. 808, 812 n.3 (1984). "The primary purpose of the prohibition against dispensing [i.e., against delivery to one who would be in lawful possession notwithstanding the illegality of the delivery itself] is to require practitioners to register with the Commissioner of Public Health . . . and to keep records and maintain inventories." *Ibid.* The offense of dispensing is a device by which to hold doctors criminally liable where their conduct, but not necessarily that of their patients, is wrongful. In other words, the delivery is criminal but the corresponding receipt and resulting possession are not.

may constitute dispensing, but others will constitute distributing. The distinction itself may seem trivial, but the principle that requires it to be observed is fundamental. The courts must ensure that convictions have integrity, and that process entails demanding proof of all elements, trivial or otherwise, beyond a reasonable doubt. The specter of prosecutors being found to have come "close enough" is not an eventuality to be taken lightly.

It is unlikely, therefore, that the court's admonition in *Commonwealth* v. *Comins*, 371 Mass. 222, 227 n.6 (1976), cert. denied, 430 U.S. 946 (1977), that "the choice of words [i.e., dispense or distribute] should not be permitted to become crucial," was intended to mean that courts should overlook the express text of G. L. c. 94C, § 1, and treat the words "dispense" and "distribute" as synonyms. First, the purpose of the court's comment was to encourage amendment of the statute. Second, the principal question presented in *Comins* was whether any doctor, in any circumstance, could be charged with the offense of dispensing. The comment, it seems, was addressed strictly to that aspect of the controversy. When the time came to evaluate the sufficiency of the evidence as to each element of dispensing, the court treated the "ultimate user" requirement quite seriously. Indeed, part of the court's holding was that undercover police officers, when acting within the scope of their investigatory duties, qualified as ultimate users within the meaning of § 1. *Id.* at 231.

I acknowledge the majority's citation to *Commonwealth* v. *Chatfield-Taylor*, 399 Mass. 1, 4 (1987), wherein the court stated that "[t]he essential elements of the crime of unlawful dispensing are set out in G. L. c. 94C, § 19, which states that '[a] prescription for a controlled substance [is valid if it is] issued for a legitimate medical purpose by a practitioner acting in the usual course of his professional practice' " (footnote omitted). The issue in *Chatfield-Taylor*, however, was whether the evidence at trial sufficed to prove that the defendant was a practitioner. *Id.* at 5-6. The elements of the offense were, quite simply, not in dispute. Similar is the case of *Commonwealth* v. *Pike*, 430 Mass. 317 (1999), relied upon by the majority for the same proposition. The elements of dispensing were not contested in *Pike*, where the sufficiency of the evidence dispute concerned

whether the prosecution had carried its burden to show bad faith or lack of medical purpose. *Id.* at 321.

By contrast, where the court has addressed the issue squarely, it has stated with absolute clarity that lawful possession by the recipient of controlled substances is an element of the crime of dispensing. I have already discussed the *Comins* case, *supra.* Even more compelling is *Commonwealth* v. *Perry*, 391 Mass. 808, 812 (1984), wherein the court held that a physician, who prescribed controlled substances to himself without medical justification, could not be convicted of dispensing because he did not possess the controlled substances lawfully and thus did not satisfy the definition of an ultimate user. The court there stated that "a physician 'dispenses,' within the meaning of our controlled substances statute, only if he or she prescribes a controlled substance for someone whose possession will be lawful." *Ibid.*

Notwithstanding the various interpretations given to the analogous provisions of the Federal Controlled Substances Act in the United States Code, it is my conclusion that the Massachusetts statute, and pertinent decisional law, compel a result other than that reached by the majority. As such, I respectfully dissent.

3. *Charges for Medicaid fraud and larceny.* In connection with the various prescriptions and office visits found by the jury to have been without an intended medical purpose, the defendant was convicted of Medicaid fraud (G. L. c. 118E, § 40) and larceny over $250 (G. L. c. 266, § 30). These crimes, unlike that of unlawful dispensing, do not have an "ultimate user" element. The Commonwealth presented evidence sufficient to prove each element of these crimes, and therefore I agree with the majority that these convictions must be affirmed.