## COMMONWEALTH *vs.* STEVEN J. SIMMONS.

Norfolk. September 14, 1979. — November 16, 1979.

Present: BROWN, GREANEY, & KASS, JJ.

*Assault and Battery. Evidence,* Cross-examination, Fresh complaint, Expert opinion, Hypothetical question. *Practice, Criminal,* Instructions to jury.

At the trial of a nurse's aide for assault and battery on a hospital patient, the judge did not abuse his discretion in excluding the defense counsel's line of questioning to the victim and her physician as to the victim's emotional state resulting from her concern about the effect of pending surgery on her sexuality. [714-715]

Where a defendant charged with assault and battery established that the victim did not complain immediately after the incident despite a number of opportunities to do so, he was not prejudiced by the exclusion of other more collateral questions on the same subject. [715-716]

At the trial of a defendant charged with assault and battery, the judge did not err in refusing to instruct the jury that they might find express consent where he had instructed them that the Commonwealth had the burden of establishing the absence of consent. [716-717]

At the trial of a nurse's aide charged with assault and battery on a hospital patient, there was no error in the judge's instructions on the issues of intent and justification. [717-718]

At the trial of a nurse's aide charged with assault and battery on a
hospital patient, there was no error in admitting testimony con-
cerning acceptable medical practices. [718]

There was no merit to a defendant's contention that the judge at his
criminal trial erred in allowing the prosecutor to ask certain
hypothetical questions of expert witnesses because those ques-
tions omitted pertinent evidence. [718-719]

INDICTMENT found and returned in the Superior Court
on November 14, 1977.

The case was tried before *Young, J.*

*Bernard A. Dwork* for the defendant.

*Charles J. Hely,* Assistant District Attorney, for the
Commonwealth.

KASS, J.   Since no witnesses other than the victim ob-
served the assault and battery for which the defendant
Simmons was indicted, the focus of his trial was on the
credibility of the victim.   In this appeal from his convic-
tion, the defendant claims error in the exclusion of cer-
tain questions designed to test the credibility of the com-
plaining witness, a patient in a hospital where Simmons
was employed as a nurse's aide.   Other assignments of
error involve jury instructions.

According to the Commonwealth's evidence, the un-
lawful touchings which Simmons inflicted on the patient
in his care involved administering three baths during the
defendant's 11:00 P.M. to 7:00 A.M. shift and several fin-
ger insertions into the patient's rectum. These include
one insertion of a finger into her rectum and the appa-
rently simultaneous insertion of a finger into her vagina,
with pushing until the patient cried.

1. *Questions relating to emotional stability of the vic-
tim.*

It was the principal theory of the defense that the
twenty-nine year old patient, who was to have a colec-
tomy in the morning, was so distressed by that prospect
that she was unable to perceive clearly what happened
during the night in question and fantasized sexual over-
tones to the dutiful nursing attentions of the defendant.

In pursuit of this strategy, the defendant's lawyer attempted to elicit testimony from the victim and her attending physician that she was concerned about the effect of the pending surgery on her sexuality. The trial judge excluded this line of questioning; in so doing he acted within his discretion.

The emotional condition of a witness is a proper subject for cross-examination to the extent it bears on the accuracy, veracity or credibility of the witness. *Commonwealth* v. *Nassar,* 351 Mass. 37, 48 (1966), *S.C.,* 354 Mass. 249 (1968), cert. denied, 393 U.S. 1039 (1969). *Commonwealth* v. *Caine,* 366 Mass. 366, 369 (1974). Cf. *Commonwealth* v. *Fillippini,* 2 Mass. App. Ct. 179, 189 (1974). It is apparent from the record that the trial judge was well aware of the wide latitude cross-examination enjoys, and his drawing of the line as to the scope of cross-examination was well within his sound discretion. *Commonwealth* v. *Nassar, supra* at 43-44. *Commonwealth* v. *Fillippini, supra* at 189. Questions about the victim's concern over her sexuality could surely have been viewed by the judge as beyond the limits of relevance. Certainly these questions could not be characterized as an effort to cross-examine about an alleged contradictory statement relating to the main issue being tried. Compare *Commonwealth* v. *West,* 312 Mass. 438, 440 (1942).

Similarly, questions on cross-examination relating to possible past emotional instability ("And isn't it a fact ... that in your history given to the Lahey Clinic, you stated that you became a music teacher and developed diarrhea?") and the general reaction of patients ("And, Doctor, is it fair to say that in many of these patients, whom you examine with ulcerative colitis, they tend to be emotionally upset people?") had, as the judge observed, little to do with the ability of the victim "to observe and her attitude and capacity for observation."

2. *Questions concerning freshness of complaint.*

The defendant also complains about the refusal of the judge to permit a line of cross-examination to establish

that the patient's complaint was not fresh and, hence, suspect. See *Commonwealth* v. *Bailey,* 370 Mass. 388, 394 (1976). Through other questioning, however, the defense had established that the victim was aware that there was a charge nurse with general responsibility for the area in which the victim's bed was located; that the victim was aware that if she rang for a nurse, a light would go on at the nurses' station, and that there was generally a nurse there; that the victim was ambulatory and able to walk to the nurses' station; that the victim made no attempt to call the female nurse who was close by; that the victim made no attempt to call her husband even though she had a phone by her bed and knew where he was staying; that the victim made no attempt to contact the other female patient in her room, and, instead, went to sleep; and the victim did not ring for the nurse even when the defendant required the third bath of the night. Exclusion, therefore, of more collateral questions as to what the victim determined, considered, questioned, or felt about the defendant's actions worked no prejudice against him.

3. *Jury instructions on consent.*

In the course of his charge to the jury, the judge instructed on the issue of consent as follows:

> "The burden of proof is on the Commonwealth to show beyond a reasonable doubt that she did not consent. That is an element here, the unconsented, intentional, unjustified use of force on the person of another. On the question of consent, I charge you that you may infer that when a person enters a hospital for medical treatment that person does consent to certain touchings which are part of the medical treatment or the general nursing care of the hospital; but you may also infer, though you need not, it is for you to determine, that a touching, a use of force outside the scope of what is appropriate medical care and nursing care for the condition from

which she was then suffering, was unconsented,
was not consented to. It is up to you to determine
from all the circumstances whether you find that
the touching, if you find that there was a touching,
a use of force, was not consented to."

The defense objects that this instruction might have
been construed by the jury to mean that a touching out-
side the realm of appropriate medical care was perforce a
touching without consent. The defendant's attorney had
requested, without success, that the judge charge the
jury to the effect that the victim could have expressly
given her consent to a touching, irrespective of accepted
medical practice.

The flaw in this objection is that the judge's charge did
expressly inform the jury that the Commonwealth had
the burden of establishing the absence of consent, thus
giving the defendant the substance of what he request-
ed; and that a touching inconsistent with medical prac-
tice was a circumstance from which the jury might infer
lack of consent. Nor does it appear from the record that
the defense undertook during trial to suggest that the
patient acquiesced in the grotesque touching complained
of. Rather, the defense was founded on the far more
plausible proposition that the incidents complained of
simply never happened. Viewed in its entirety, the in-
struction was correct. *Commonwealth* v. *Pinnick,* 354
Mass. 13, 15 (1968). Implicit in the judge's instruction
that the Commonwealth must prove lack of consent is a
recognition that the victim may have consented. A spe-
cific instruction that the jury might find express consent
would have been redundant.

4. *Jury instructions on intent and justification.*
Other objections by the defense to the jury instruc-
tions of the judge revolve around the issues of intent and
justification. We have read the instructions of the judge
carefully, and we find his instructions on these questions

to be particularly lucid. The defendant asked for an instruction that justification for the touchings[1] could be found if the defendant had been acting in accordance with his general training, even if none could be found in the general directions of the hospital. A specific protocol for nurses' aides had been received in evidence, and, in that light, the propriety of the requested instruction would have been dubious. The judge was right in instructing the jury to hold the defendant to an objective standard of conduct for a nurse's aide. As to where that standard might be found, the instructions were more than adequately broad because they included reference to the "general instructions which were then in force at the time and were communicated to him, or of which he had actual knowledge" and to the forms of treatment "recognized by the medical or nursing profession."

In the area of proper medical standards and instructions to nurses' aides, the defendant objects to admission of testimony concerning acceptable medical practices. These are surely a proper subject for expert testimony. *Commonwealth* v. *Agiasottelis,* 336 Mass. 12, 14 (1957). *Commonwealth* v. *Comins,* 371 Mass. 222, 233 (1976), cert. denied, 430 U.S. 946 (1977). That some of the expert testimony was contradictory did not require its exclusion. The jury must resolve the conficts in expert testimony. *Dodge* v. *Sawyer,* 288 Mass. 402, 408 (1934). Leach and Liacos, Handbook of Massachusetts Evidence 92 (4th Ed. 1967).

5. *Other assignments of error.*

We understand the principal objection of the defendant to certain hypothetical questions asked of expert witnesses to be that those questions omitted pertinent evidence. A trial judge has wide discretion with respect to hypothetical questions, *M. DeMatteo Constr. Co.* v. *Daggett,* 341 Mass. 252, 261 (1960), and the facts as-

---

[1] It was open to the jury to find that the more invasive touchings did not occur although the several baths did occur.

sumed in the challenged hypotheticals were quite suffi-
cient to allow the questions to be put to the witnesses. It
was open to the defense "to show on cross-examination
of the expert that there are facts in the case not ac-
counted for in the opinion of the expert." *Common-
wealth* v. *Noxon,* 319 Mass. 495, 538 (1946). *M. DeMat-
teo Constr. Co.* v. *Daggett, supra* at 261. There is no
merit to the defendant's objection that testimony from
Gail Gilchrist concerning instructions which she gave to
the defendant should not have been received because she
was the charge nurse on the shift immediately prior to
that which the defendant worked. Gilchrist was a regu-
lar employee of the hospital; the charge nurse on the de-
fendant's shift was not. Since hospital standards and
specific instructions were proper subjects for the jury to
consider, the testimony of Gilchrist was relevant and ad-
missible.

*Exceptions overruled.*