NOTICE:  All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports.  If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-
1030; SJCReporter@sjc.state.ma.us

25-P-668                                          Appeals Court

COMMONWEALTH  vs.  JOSE BENEVIDES.

No. 25-P-668.

Worcester.     March 2, 2026. – April 28, 2026.

Present:  Henry, Shin, & Toone, JJ.


Indecent Assault and Battery.  Consent.  Practice, Criminal,
     Motion for a required finding.



     Complaint received and sworn to in the Leominster Division
of the District Court Department on October 18, 2023.

     The case was tried before Christopher P. LoConto, J.


     Eric W. Ruben for the defendant.
     Jennifer Rose, Assistant District Attorney, for the
Commonwealth.


     TOONE, J.  Following a trial in the District Court, a jury

convicted the defendant, Jose Benevides, of indecent assault and

battery, G. L. c. 265, § 13H.  On appeal, the defendant contends

that the evidence was insufficient to prove beyond a reasonable

doubt that the victim, having agreed to allow the defendant to

give her a tattoo on her front and outer thigh, did not consent

to his touching her pubic area and inner thigh of the other leg. Because a rational trier of fact could have inferred that the victim consented only to those touchings of her body that were necessary and appropriate for application of the tattoo, we conclude that the judge did not err in denying the defendant's motions for a required finding of not guilty. Accordingly, we affirm.

Background. "Because the defendant challenges the sufficiency of the evidence presented, we summarize the facts the jury could have found in the light most favorable to the Commonwealth." Commonwealth v. Tavares, 471 Mass. 430, 431 (2015).

The victim testified that she made an appointment with the defendant to get a new tattoo. He had previously given her three tattoos without incident; they had no other interaction or relationship. This time, the victim planned to get a five-inch long tattoo on the front and outside part of her right thigh. After the defendant placed the stencil on her thigh and began applying ink, he put his ring and pinky fingers directly on the victim's pubic area. At first, she believed that the defendant did not realize where he had placed his fingers, and he "apologized for it once he realized." As the appointment continued, the defendant's comments and behavior led her to believe "that it was not an accident."

The new tattoo became inflamed, and the victim started to shake from the pain. The defendant used a cream to alleviate the inflammation, but he "rubb[ed] it aggressive[ly] at first," which caused the victim to jump. The defendant apologized and "started to massage it," at which point the victim commented, "Oh, like, I get a beautiful piece and, like a nice, calming massage." After the defendant said that "we could extend those services to something more exciting," the victim felt uncomfortable and responded, "that's not what I'm here for. I just want the tattoo . . . ." The defendant then made a "sex joke" that referred to how the victim was shaking from the pain, which also made her uncomfortable. She said quietly, multiple times, "No, I don't want to extend the services in that way. I don't feel comfortable with that. That's not what I'm here for." The defendant proceeded in silence.

After the defendant finished the tattoo, the victim was ready to "jump off the table because [she] was very uncomfortable with what was going on." The defendant told her he needed to apply ointment and wrapping, so she got back on the table. After the defendant said, "Oh, you have . . . extra ink," the victim looked down, confused, and saw on her left leg "the smallest, smallest amount of ink very, very close to [her] pubic area," where her "leg creases." The defendant said, "Oh, let me get it for you," and turned around to grab a paper towel

and solution. The victim told him, "No, I'm -- it's okay. Like, I'll take a shower when I get home. I can take care of that." The defendant then shoved his hand between her thighs and "started to sexually rub [her] thigh." The victim "froze up because [she] didn't know what to do," but, after the defendant asked if she "wanted to have fun with him, insinuating something sexual," she "snapped out of it" and said she did not. The defendant said, "But my hands were already there earlier," a statement that indicated to the victim that his earlier touching of her pubic area had not been accidental.

After the defendant applied the ointment, the victim started to pull up her pants because she "just wanted to get out of there," but the defendant insisted on wrapping her tattoo in plastic. The victim reluctantly allowed him to do so because she wanted "to make sure that [she was] safe" and feared that if she made "any rash movements," the defendant would prevent her from leaving. When the victim started to pull up her pants again, the defendant insisted on applying tape, which the victim allowed because she did not "want to make this worse." After that, the victim immediately grabbed her wallet and paid the defendant, who "continuously tried to hug" her and talked about setting up another appointment. Trying to stay calm, the victim descended the stairs, walked out of the building, and used her cell phone to call for a ride; as she waited, the defendant came

outside and repeatedly asked if she wanted a ride from him, which she declined. The victim reported the incident to the police four days later.

At the close of the Commonwealth's case, the defendant moved for a required finding of not guilty, which the judge denied. The defendant did not testify, and defense counsel called no witnesses. The defendant renewed his motion for a required finding, which the judge again denied. The judge instructed the jury on the charge of indecent assault and battery and the lesser included offense of assault and battery. The jury found the defendant guilty of the charged offense.

Discussion. In reviewing the denial of a motion for a required finding of not guilty, "we assess the evidence in the light most favorable to the prosecution to determine whether any rational trier of fact could have found each element of the crime beyond a reasonable doubt." Commonwealth v. Robinson, 493 Mass. 303, 307 (2024), citing Commonwealth v. Latimore, 378 Mass. 671, 677-678 (1979). "A conviction may rest exclusively on circumstantial evidence, and, in evaluating that evidence, we draw all reasonable inferences in favor of the Commonwealth" (citation omitted). Commonwealth v. Bonner, 489 Mass. 268, 275 (2022). "The relevant question is whether the evidence would permit a jury to find guilt, not whether the evidence requires

such a finding." Commonwealth v. Brown, 401 Mass. 745, 747 (1988).

To prove indecent assault and battery under G. L. c. 265, § 13H, the Commonwealth must prove that "'the defendant committed an intentional, unprivileged, and indecent touching of the victim' without the victim's consent." Commonwealth v. Butler, 97 Mass. App. Ct. 223, 232 (2020), quoting Commonwealth v. Kennedy, 478 Mass. 804, 810 (2018).[1]  Here, the defendant committed two allegedly indecent touchings:  the placement of his fingers on the victim's pubic area as he started to apply ink, and the rubbing of her inner thigh after he spotted extra ink near her pubic area.  On appeal, the defendant does not contend that the evidence was insufficient to prove that the touchings were indecent, see Commonwealth v. Cruz, 93 Mass. App. Ct. 136, 138-141 (2018), or that he committed them intentionally, as opposed to accidentally or inadvertently.  See Commonwealth v. Holbrook, 86 Mass. App. Ct. 391, 393-394 (2014). Rather, he challenges the sufficiency of the evidence that the victim did not consent to the touchings.

"The element of lack of consent in a prosecution for indecent assault and battery is the same as in a prosecution for

---

[1] The Commonwealth does not need to prove lack of consent when the victim is under the age of fourteen.  See G. L. c. 265, § 13B (child under fourteen "shall be deemed incapable of consenting").

rape."  Commonwealth v. St. Louis, 473 Mass. 350, 361 (2015).

In determining whether the evidence was sufficient to prove this

element, we consider "the totality of the circumstances,"

including "the entire sequence of events and acts" of the

defendant (citations omitted).  Commonwealth v. Martinez, 104

Mass. App. Ct. 13, 19 (2024).  An "explicit verbal or physical

rebuff" by the victim is not required.  Commonwealth v. Shore,

65 Mass. App. Ct. 430, 433 (2006).[2]

The defendant contends that there was insufficient evidence

of the victim's lack of consent because, "[b]y requesting [him]

to apply a tattoo to her thigh, [the victim] clearly gave her

consent for him to touch her in areas specifically identified by

this court as 'private areas,'" and the victim did not

effectively communicate her "withdrawal of consent" before "the

alleged indecent assault and battery."  This argument

misapprehends the scope of the victim's consent.  Like a patient

undergoing a medical procedure, the victim here consented to a

specific procedure by the defendant:  the placement of a tattoo

on her front and outer right thigh.  See Commonwealth v.

Seesangrit, 99 Mass. App. Ct. 83, 88 (2021) ("A patient

undergoing an appropriate medical procedure . . . consents to

---

[2] "[A]lthough the Commonwealth bears the burden of proving
the victim did not consent to the touching, it does not need to
prove that the defendant intended that the touching be without
consent."  Butler, 97 Mass. App. Ct. at 232.

that activity in advance.  Such consent does not extend, however, to actions of a medical practitioner such as the Commonwealth asserts occurred here -- that is, actions which are not a necessary and appropriate medical procedure").  See also Commonwealth v. Simmons, 8 Mass. App. Ct. 713, 717 (1979) ("a touching inconsistent with medical practice [i]s a circumstance from which the jury might infer lack of consent").  The victim did not consent to touchings of her body that were unnecessary or inappropriate for the agreed-upon tattoo procedure.  In particular, she did not give the defendant permission to touch her pubic area or inner thigh, much less in a sexualized manner.

We have "held that the intentional, unjustified touching of private areas such as 'the breasts, abdomen, buttocks, thighs, and pubic area of a female'" may constitute an indecent assault and battery.  Cruz, 93 Mass. App. Ct. at 138, quoting Commonwealth v. Mosby, 30 Mass. App. Ct. 181, 184-185 (1991).  See Commonwealth v. Miozza, 67 Mass. App. Ct. 567, 571 (2006) ("However, a touching need not be confined to these listed areas of the body to be deemed indecent").  Contrary to the defendant's argument, however, it hardly follows that by allowing the defendant to touch her front and outer thigh for the purpose of applying a tattoo, the victim also consented to his touching her pubic area and inner thigh for other purposes.  Rather, the jury was entitled to infer that, in agreeing to have

the defendant give her a tattoo, the victim consented to "certain touchings which are part of the" tattoo procedure but did not also consent to touchings "outside the scope of what is appropriate" for it. Seesangrit, 99 Mass. App. Ct. at 89, quoting Simmons, 8 Mass. App. Ct. at 716-717. On this basis alone, the jury could have found beyond a reasonable doubt that the victim did not consent to the touching of her pubic area and inner thigh.

For similar reasons, we disagree with the defendant's contention that the Commonwealth had to prove that the victim "withdrew her consent" during the appointment. Withdrawal is not an issue if the victim did not initially consent to the sexual contact. See Commonwealth v. Scott, 98 Mass. App. Ct. 843, 856-857 (2020). Cf. Commonwealth v. Sherman, 481 Mass. 464, 473 (2019) (consensual sexual intercourse can become unlawful where victim withdraws consent during encounter). Because the jury could have reasonably inferred that the victim never consented to any touchings by the defendant unnecessary to the application of the requested tattoo, the Commonwealth did not have to prove that she withdrew such consent before such touchings occurred. Nor must we, as the defendant contends, assess the victim's statements and conduct to determine whether she "reasonably communicated the withdrawal of consent in such a

manner that a reasonable person would have known that consent had been withdrawn."  Id. at 474.

To be clear, in determining whether the Commonwealth proved the defendant's guilt beyond a reasonable doubt, the jury was entitled to consider other evidence of the victim's lack of consent, including her expressed and apparent discomfort with the defendant's sexual insinuations and her repeated statements that she "just want[ed] the tattoo" and did not want to "extend the services in that way."  See Martinez, 104 Mass. App. Ct. at 19 (lack of consent analysis based on totality of circumstances).  The jury could also consider that the victim said, "No," and "I can take care of that," after the defendant prepared to clean the extra ink close to her pubic area, before he began to rub her inner thigh.  See Kennedy, 478 Mass. at 811 (victim provided "clear, objective indicia of nonconsent" by saying "no").  But even at the start of the appointment, before the defendant engaged in any inappropriate statements or conduct, the jury could infer the victim's lack of consent to both of his indecent touchings from the limited scope of consent inherent in their agreement for tattoo services.  Accordingly, the judge did not err in denying the defendant's motions for a required finding of not guilty.

Judgment affirmed.